MIGUEL A. RESTO CASILLAS y OTROS, demandantes y recurridos, *v.* ISMAEL COLÓN GONZÁLEZ y OTROS, demandados y recurrentes.

*Número:* R-81-147 *Resuelto:* 26 de abril de 1982

*Amancio Arias Guardiola*, de *Arias Cestero & Arias Guardiola*, abogado de las demandadas; *Magda Soto*, abogada del recurrido Fondo del Seguro del Estado; *Agustín Mangual Hernández*, abogado de los recurridos.

PER CURIAM: Mientras se encontraba detenido ante un semáforo, en funciones de su trabajo, Miguel Resto Casillas fue impactado por la parte posterior del auto que conducía por un camión propiedad de la Puerto Rico Distillers Corp. Los médicos del Fondo del Seguro del Estado concluyeron que el señor Resto sufrió una contusión en la espalda y el cuello que causó severo esguince cervical y miositis crónica cervical. Resto estuvo por largo tiempo bajo tratamiento del Fondo. Como consecuencia, su salud mental degeneró y culminó en un diagnóstico de esquizofrenia tipo indiferenciada. Se determinó un 45% de incapacidad mental y un 25% de incapacidad de funciones fisiológicas. Por culpa de ambas incapacidades el empleado se veía impedido de trabajar y debía ser compensado. El Fondo se subrogó en los derechos del empleado e instó demanda de daños y perjuicios. Posteriormente la esposa y los hijos del señor Resto radicaron demanda por los daños que ellos habían sufrido. Se consolidaron ambas demandas, pero la causa de acción de la esposa se desestimó por estar prescrita.

El día del juicio se efectuó una estipulación en cámara. Entre otras cosas, los demandados aceptaron su negligencia, aceptaron como ciertos los por cientos de incapacidad determinados por el Fondo y aceptaron que había incurrido en gastos ascendientes a $30,855. Se admitieron en evidencia varios informes médicos y evaluaciones siquiátricas del demandante y de sus hijos menores. Luego de apreciar la prueba, el tribunal de instancia concluyó que

los daños físicos y mentales ascendieron a $50,000. Concedió la cantidad de $24,180 por concepto de pérdida de ingreso. Conforme a la ley,[1] de esa cantidad el señor Resto debía devolverle al Fondo la cantidad estipulada de $30,855 invertida en su caso. El tribunal, además, concedió a dos de los hijos menores $5,000 para cada uno.[2] El 4 de marzo de 1981 reconsideró y eliminó la partida concedida por concepto de pérdida de ingresos.

*Primer error:* "Erró el tribunal de instancia al concluir que la condición mental estuvo relacionada con el accidente y que esta determinación no estuvo sostenida por la prueba." Alegan los demandados que la causa de la condición mental desarrollada por el demandante fue su propia naturaleza, ya que en la familia de éste existe historial de locura prominente. Para que una condición mental sea compensable, la condición tiene que ser de tal naturaleza que origine incapacidad, debe existir relación causal entre el accidente y la condición mental y ésta ha de probarse por medios de prueba convincentes. *Morell* v. *F.S.E.*, 110 D.P.R. 709 (1981). Anteriormente hemos dicho en cuanto a la relación causal en casos de enfermedad mental desarrollada posterior a un accidente que para que ésta exista basta que un accidente haya sido la causa que exteriorice una condición patológica. Las predisposiciones del que sufre la lesión no derrotan su derecho a compensación. En *Concepción Guzmán* v. *Autoridad de Fuentes Fluviales*, 92 D.P.R. 488 (1965), varios siquiatras testificaron. Estuvieron de acuerdo en que el lesionado sufría de personalidad histérica-neurótica. Hubo un fuego en su casa por culpa de una explosión de un poste de la Autoridad de

---

[1] Ley de Compensaciones por Accidentes del Trabajo, Art. 31 (11 L.P.R.A. sec. 32).

[2] No concedió daños al hijo menor por considerar que era muy pequeño para haber sufrido los daños mentales producto de la situación familiar a raíz del accidente.

las Fuentes Fluviales que se derrumbó y la incendió. El shock original de la explosión más el estado de ansiedad prolongado durante los días subsiguientes causó una reacción de conversión donde la insanidad o miedo se convirtió en enfermedad física.

En el caso de autos, el demandante admitió que tiene varios hermanos que sufren de diversas enfermedades síquicas. Presumiendo que tuviera una predisposición natural a este tipo de enfermedad, no quiere decir que no existió relación causal entre el accidente de auto y la condición actual. Muy al contrario, el informe del 10 de junio de 1975, suscrito por el doctor Alonso, Director de los Servicios de Siquiatría del Fondo, que confirma las opiniones de otros dos de sus facultativos, el doctor López Cumpiano y el doctor Ortiz Cruz, expresa que el caso de esquizofrenia crónica no definida estuvo relacionado con el accidente por agravación. Estas opiniones coinciden con la opinión del siquiatra privado del demandante, el cual redactó un extenso informe y testificó el día del juicio. En el contrainterrogatorio se mantuvo firme en su opinión, expresando que luego de haber estudiado el historial sicológico personal y familiar había concluido que el accidente y la crisis económica y social posterior a éste precipitaron el estado esquizofrénico. La relación causal se estableció por medios de prueba más que convincentes.

■ El doctor Guzmán Acosta, neurólogo, contratado por la compañía aseguradora de los demandados, examinó al demandante. En su informe de 16 de febrero de 1977, admitido en evidencia, concluyó que todos los datos recopilados indicaban sin duda que el demandante sufría de enfermedad mental. Opinó que pudo deberse a tres causas:

a) el accidente de carro ocasionó el comienzo de actividad anti-social de la personalidad sicopatológica de Resto

b) el accidente simplemente agravó una condición o conducta pre-existente que no había sido reconocida

c) la forma burocrática de administrar el tratamiento médico precipitó una condición genética pre-existente.

Opinó que en este caso el proceso patológico fue inducido por el tratamiento médico mismo. Sobre las dos primeras posibles causas ya vimos que la doctrina responsabiliza al demandado por los daños. Sobre la última hemos decidido que cuando una persona por su negligencia es responsable de los daños causados a otra, dicha persona es también responsable de los ocasionados por la forma en que se prestaron los servicios médico-quirúrgicos o de hospital. *Rodríguez Sosa* v. *Cervecería India,* 106 D.P.R. 479, 483 (1977); *Merced* v. *Gobierno de la Capital,* 85 D.P.R. 552, 556 (1962). Los propios peritos del Fondo, acostumbrados a discernir entre casos fingidos y reales, concluyeron que existía una condición mental. Ahora bien, lo que sí encontramos excesiva es la cantidad de $50,000 concedida. Entendemos que la suma de $30,000 por los daños físicos y morales es razonable.

 *Segundo error:* "Erró el Tribunal de instancia al condenar a los recurrentes al pago de la suma de $30,855 por concepto de gastos incurridos por el Fondo." No es correcto que el tribunal condenara a los recurridos al pago de la suma de $30,855 por concepto de gastos incurridos por el Fondo. El tribunal determinó que "[d]e la mencionada cuantía que le corresponde al demandante Miguel A. Resto Casillas se deducirá la suma de $30,855 que serían pagados a favor del Fondo del Seguro del Estado". Bajo el Art. 31 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. 32, un tercero demandado no tiene derecho a impugnar los gastos incurridos por el Fondo. Se trata de una acción de daños y perjuicios común. El Fondo se subroga en los derechos del empleado y lleva

la causa de acción en nombre del empleado.(³) *Administradora F.S.E.* v. *Maldonado*, 107 D.P.R. 527 (1978); *Gallart Adm.* v. *Banco Popular*, 91 D.P.R. 821 (1965). El tercero tiene derecho a impugnar o cuestionar la cuantía de daños físicos, mentales o económicos sufridos por el empleado, pero no tiene derecho a cuestionar los gastos en que incurra el Fondo. Cualquier suma que se obtenga como resultado de la acción de daños responderá por los gastos incurridos por el Fondo. Si esa suma excede los gastos incurridos, el sobrante se le entregará al empleado. Si no excediere, el Fondo sólo recibirá lo concedido al obrero.

En cuanto al tercer error, no intervendremos con la apreciación de la prueba que efectuó el Honorable Juez del tribunal de instancia. Estamos satisfechos con dicha apreciación. Él oyó y le dio crédito al doctor Santiago, el cual declaró que uno de los niños se encontraba en estado de desbalance y angustia, y el otro en estado depresivo y de ansiedad, y esto se debía en su opinión a la condición esquizofrénica del padre.

*Se modificará la sentencia en los términos antes expresados.*

El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Negrón García no intervinieron.

---

(³) En su parte pertinente el Art. 31 dispone:

"Cuando un obrero o empleado lesionado, o sus beneficiarios en.casos de muerte, tuvieren derecho a entablar acción por daños contra tercero, en los casos en que el Fondo del Seguro del Estado, de acuerdo con los términos de este Capítulo, estuviere obligado a compensar en alguna forma, o a proporcionar tratamiento, el Administrador del Fondo del Seguro del Estado se subrogará en los derechos del obrero o empleado, o de sus beneficiarios, y podrá entablar procedimientos en contra del tercero en nombre del obrero o empleado, o de sus beneficiarios, dentro de los noventa (90) días siguientes a la fecha en que la decisión fuere firme y ejecutoria, y cualquier suma que como resultado de la acción, o a virtud de transacción judicial o extrajudicial se obtuviere en exceso de los gastos incurridos en el caso se entregará al obrero o empleado lesionado o a sus beneficiarios con derecho a la misma. El obrero o empleado o sus beneficiarios será parte en todo procedimiento que estableciere el Administrador bajo las disposiciones de esta sección y será obligación del Administrador notificar por escrito a las mismas de tal procedimiento dentro de los cinco (5) días de iniciada la acción."