694

ÁNGEL LASALLE LUGO, demandante y peticionario, *v.* JUNTA DE DIRECTORES, ADMINISTRACIÓN DE COMPENSACIÓN POR ACCIDENTES DE AUTOMÓVILES, demandados y recurridos.

*Número:* CE-93-756          *Resuelto:* 6 de mayo de 1996

*Miguel A. Morales Fajardo,* abogado del peticionario; *Rafael Alen González,* abogado de los recurridos.

— o —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

En el caso de autos, la mayoría del Tribunal confirma una decisión del tribunal de instancia por considerar que es correcta la interpretación sumamente restrictiva de la

Ley de Protección Social por Accidentes de Automóviles (en adelante la Ley), que hizo dicho foro. Disiento de tal dictamen mayoritario porque creo que puede hacerse aquí una interpretación más liberal del estatuto en cuestión, y porque la postura actual de la mayoría es contraria a lo decidido por este mismo Tribunal en casos recientes esencialmente iguales. Veamos.

## I

En esencia, la cuestión ante nos es si procede que la Administración de Compensación por Accidentes de Automóviles (en adelante A.C.A.A.) pague al recurrente el beneficio por desmembramiento que dispone la Ley, en una situación en la cual la pérdida de una pierna, ocasionada por un accidente de automóvil, ocurrió tres años después del accidente.

Debe señalarse que no hay dudas, en el caso de autos, de que la amputación que sufrió el recurrente *fue ocasionada por el accidente automovilístico.* Tampoco existe duda alguna de que el recurrente estuvo bajo *tratamiento médico continuo* desde que sufrió la grave fractura de su pierna durante el accidente hasta que ésta le fue amputada. Es decir, el recurrente aquí sufrió una fractura abierta y severa en su pierna derecha en el accidente, que luego se infectó y más tarde dio lugar a una osteomelitis crónica, que finalmente hizo necesaria la amputación.

Como se sabe, la Ley que nos concierne en este caso se creó con el propósito de proveer una compensación *expedita* a las víctimas de accidentes de tránsito para aliviar los sufrimientos y el desamparo que esos accidentes provocan. Véase *Morales v. Lizarríbar*, 100 D.P.R. 717, 730–731 (1972). Se trata de una importante finalidad social, dirigida a encarar lo que tanto las ramas políticas del Estado, como este Foro, han considerado como "[u]no de los problemas más serios que padece la sociedad puertorriqueña".

Íd., págs. 718–719. La propia Ley, desde que fue aprobada en 1968, dispone de manera amplia y abarcadora que "[t]endrá derecho a los beneficios [de la ley] toda persona natural que sufra daño corporal ... como consecuencia del ... uso ... de un vehículo de motor". 9 L.P.R.A. sec. 2053.

Conforme a lo anterior solamente, es indudable que el recurrido tendría derecho a los beneficios de la Ley. Sin embargo, la Sec. 5(1)(j) de la Ley, 9 L.P.R.A. sec. 2054(1)(j), indica en la actualidad que se pagará determinada suma, "si las lesiones sufridas en un accidente son la causa de la pérdida [del miembro del cuerpo] dentro de las 52 semanas siguientes a la fecha del accidente". Tal disposición requiere que interpretemos la Ley para decidir qué limitación surge de ella al amplio y fundamental derecho a compensación que, en general, la Ley misma establece para estos casos.

¿Significa la Sec. 5(1)(j) citada que la *pérdida* o desmembramiento como tal tiene que ocurrir dentro del año siguiente al accidente para que proceda la compensación? O, en cambio, ¿significa dicha sección que la *causa* de la pérdida o desmembramiento es la que tiene que ocurrir dentro del plazo referido? La redacción de la disposición en cuestión no es clara y permite cualquiera de las dos referidas interpretaciones. Nótese, además, que la distinción entre una cosa y la otra no es ociosa, como podría parecer a primera vista. En muchas ocasiones la *pérdida* de un miembro del cuerpo y la *causa* de esa pérdida ocurren sucesivamente durante el año en cuestión. Tal es el caso, por ejemplo, de una lesión sufrida en un accidente, que sea tan masiva, que el miembro del cuerpo quede totalmente destrozado o inútil de inmediato, y acto seguido haya que hacer la amputación. Distinta a ésta es la situación en la cual la lesión no es tan masiva como la anterior y el miembro del cuerpo, aunque resulta seriamente afectado por el accidente, no requiere amputación inmediata porque existe una expectativa médica razonable de que con tratamiento

éste pueda llegar a rehabilitarse. En esta otra situación pueden surgir *complicaciones anatómicas o fisiológicas posteriores* que impiden la realización de la expectativa de rehabilitación y que a la larga ocasionan la amputación. Aquí la *pérdida* del miembro y su *causa* no ocurren tan sucesivamente como en la primera situación.

La exigencia estatutaria en esta segunda situación sería que la "causa" —las complicaciones posteriores referidas— ocurra dentro de las 52 semanas siguientes al accidente para que la eventual amputación sea compensable. El propósito de la limitación sería evitar el problema de reclamaciones en las cuales la relación causal es difícil de establecer con claridad, por razón del largo tiempo que ha transcurrido entre el accidente y el surgimiento de complicaciones posteriores que luego hayan ocasionado la amputación. Quedaría fuera del esquema de la Ley, por ejemplo, el caso de la persona que sufre una lesión en un miembro del cuerpo y es dado de alta luego de algún tratamiento, y pasado el año desde que ocurrió el accidente manifiesta entonces alguna complicación física en dicho miembro, que luego ocasiona la amputación.

En el caso de autos, la víctima del accidente sufrió una lesión grave en su pierna derecha, pero ésta no resultó tan maltrecha como para requerir una amputación inmediata. Es después de haber sido dada de alta la víctima que surgen complicaciones físicas en su pierna lesionada, que más tarde dan lugar a la amputación. Dicha amputación no ocurrió dentro de las 52 semanas posteriores al accidente, pero las complicaciones físicas que dimanaron de la lesión sí surgieron dentro de esas 52 semanas, por lo que podría interpretarse que el desmembramiento es compensable según la Ley.

Esta interpretación de la Ley no es tan restrictiva como la que hizo el foro de instancia, y tiene mayor conformidad no sólo con la naturaleza reparadora de la Ley, sino también con los claros propósitos de ésta, mencionados antes.

Reiteradamente hemos resuelto que las leyes de protección social deben interpretarse liberalmente a favor de sus beneficiarios. *Ortiz Morales v. A.C.A.A.*, 116 D.P.R. 387, 391 (1985); *Ruiz Firpo v. A.C.A.A.*, 109 D.P.R. 1 (1979). También hemos señalado que nuestra labor en estos casos es buscar la interpretación más justiciera de la ley, la que mejor propicie su sentido y sus propósitos, aunque para ello tengamos que apartarnos del significado más literal de ésta. *Pueblo v. Tribunal Superior*, 104 D.P.R. 363, 366 (1975); *Román Mayol v. Tribunal Superior*, 101 D.P.R. 807, 811 (1973). Conforme con estos conocidos principios de hermenéutica, debe prevalecer la interpretación de la ley más favorable a la víctima, como la que hemos formulado aquí.

Debe señalarse, finalmente, que la aludida interpretación liberal de la sección 2054(1)(j) citada es conforme también con las enmiendas legislativas que se le hicieron a la Ley en 1975, una de las cuales aumentó el término en cuestión de tres meses a 52 semanas. Según se dispuso expresamente en la exposición de motivos del estatuto que contenía las enmiendas, Ley Núm. 12 de 30 de octubre de 1975 (9 L.P.R.A. sec. 2052 *et seq.*), con ellas se buscaba convertir la Ley "en un instrumento que facilite más eficazmente la consecución de los fines que motivaron su aprobación". 1975 Leyes de Puerto Rico 865, 866. En particular, se resaltó la necesidad de "evitar interpretaciones [de la Ley] reñidas con los propósitos que la motivan". Íd.

## II

Es menester hacer hincapié en que ya antes, en dos ocasiones relativamente recientes, este Tribunal había pasado juicio sobre el alcance de la referida Sec. 5(1)(j). En ambas ocasiones nuestro dictamen fue a favor de la víctima, aunque la amputación en dichos casos se realizó pasado ya el término de 52 semanas que fija la Ley. Se trata de dos casos cuyos hechos eran en esencia similares a los del de

autos. En ambos la lesión sufrida por la víctima del accidente automovilístico no dio lugar a un desmembramiento inmediato. En ambos la víctima estuvo en continuo tratamiento médico desde la fecha del accidente hasta la fecha de la amputación. Y en ambos, aunque ésta ocurrió más de doce meses después del accidente, no había duda de la relación causal entre el accidente y la eventual amputación.

En los casos aludidos, *Durán v. ACCA* (Caso Civil Núm. 81-2033), y *Cintrón v. ACAA*, (Caso Civil Núm. 82-5340), el tribunal de instancia ordenó la compensación por desmembramiento y la A.C.A.A. acudió a nos cuestionando tal orden. Este Tribunal, en los dos casos aludidos, Núm. CE-81-543 y Núm. CE-83-3, dejó vigentes las órdenes del foro a quo, al declarar no ha lugar la solicitud de revisión de la A.C.A.A. Si bien tales decisiones nuestras no establecen un precedente, ello no significa que éstas no se emitieron conforme a derecho, ni que se tomaron sin la debida ponderación judicial. Por el contrario, como cualquier decisión de este Foro, éstas indudablemente se emitieron luego del correspondiente proceso de análisis y discusión. Dichas dos decisiones nuestras fueron correctas. Prueba adicional de ello es que en ningún momento en los más de diez años que han transcurrido desde que las emitimos, la Asamblea Legislativa ha intervenido para enmendar la Ley y alterar, como puede, la interpretación subyacente en dichas decisiones. El legislador ha modificado la Ley dos veces —en 1986 y 1987— desde que decidimos los casos en cuestión y en ninguna de ellas ha modificado la citada sección 2054(1)(j) para restringir el alcance de nuestras dos decisiones.

La dos decisiones aludidas nos obligan en el caso de autos por la sencilla razón de que este Tribunal no debe emitir dictámenes contradictorios en casos esencialmente idénticos. Así se lo hemos exigido a otros foros. *Textile Dye Works, Inc. v. Srio. de Hacienda*, 95 D.P.R. 708, 715 (1968).

Tenemos la responsabilidad de ser constantes en nuestras decisiones —y resolver por igual controversias similares— aunque algunas de dichas decisiones no constituyan precedentes. Esa preeminente responsabilidad surge de nuestra obligación de dar trato igual a los que acuden ante nos e invocan nuestra autoridad para que se haga justicia.

Por las razones expuestas, resolvería que la A.C.A.A. debe compensar al recurrente por la pérdida de su pierna.