ANTONIO SEVILLA RIVERA ET ALS., demandantes y recurridos, *v.* MUNICIPIO DE TOA ALTA ET ALS., demandados, terceros demandantes y recurridos, SANTA MARINA S.E. ET ALS., demandados y recurridos, y CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO, parte interventora y peticionaria.

*Número:* CC-2001-488      *Resuelto:* 20 de junio de 2003

---

*Marta Meléndez Ramos*, abogada de la Corporación del Fondo del Seguro del Estado, parte interventora y peticionaria; *Jorge Miguel Suro Ballester*, abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Tenemos la ocasión para resolver si en una acción de subrogación por un accidente del trabajo ocasionado *por la negligencia compartida* de un tercero y del propio obrero afectado, procede cobrar de la indemnización obtenida el reembolso de *todos* los gastos en los que incurrió la Corporación del Fondo del Seguro del Estado (Fondo) en el tratamiento y en la compensación del obrero.

I

El caso de autos gira en torno a un accidente de automóvil en el cual un vehículo propiedad del Municipio de Toa Alta (Municipio) atropelló a un jardinero empleado de RVT Maintenance Inc., de nombre Antonio Sevilla (Sevilla). Sevilla sufrió múltiples lesiones como consecuencia del accidente y quedó totalmente incapacitado para trabajar (100%), según lo determinó posteriormente el Fondo. En parte, el accidente referido ocurrió debido a que en un área de siembra de dominio público, Santa Marina S.E. —propietaria de un edificio conocido como Anexo *El Nuevo Día*— sembró sin autorización unos arbustos frondosos que obstruían la visibilidad en sus alrededores.

El 10 de marzo de 1995, Sevilla, su madre y sus tres hermanas presentaron ante el Tribunal de Primera Instancia una demanda por daños y perjuicios contra el Municipio y su compañía aseguradora. Los referidos demandados, a su vez, trajeron a Santa Marina S.E. como terceros demandados. Como al momento de ocurrir el accidente Sevilla se encontraba realizando labores para beneficio de su patrono, el Administrador del Fondo presentó una demanda de intervención para subrogarse en los derechos del obrero lesionado y reclamar los gastos en lo que incurrió en el tratamiento médico y en la compensación a Sevilla, ascendentes a $61,786.57, al amparo del Art. 31 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 32 (en adelante la Ley).

El 22 de diciembre de 1998 el Tribunal de Primera Instancia, Sala Superior de Bayamón, dictó una sentencia en el pleito correspondiente mediante la cual le imputó responsabilidad por el accidente en un 45% al propio obrero Sevilla, en un 20% al Municipio y a su conductor, y en un 35% a Santa Marina, S.E. El tribunal estimó que los daños que sufrieron los demandantes por el accidente ascendían a $801,334. Resolvió, además, que Sevilla absorbería el 45% de dicha cantidad por razón de su propia negligencia. También determinó que de los $440,734 remanentes que el Municipio y Santa Marina S.E. debían satisfacer conjuntamente a Sevilla, se deducirían $61,576.57; es decir, el 100% del dinero que el Fondo invirtió en el tratamiento y en la compensación de Sevilla.

Tanto la parte demandante como los terceros demandados Santa Marina S.E. y su aseguradora, acudieron a la vez con sus propios recursos de apelación ante el Tribunal de Circuito de Apelaciones. En el recurso que aquí nos concierne, la parte demandante, en esencia, cuestionó que de su indemnización se fuera a deducir *el 100% de la referida cantidad que el Fondo invirtió.*

El Tribunal de Circuito de Apelaciones acogió el planteamiento de Sevilla y modificó lo referente a la cantidad que el Fondo podía recobrar de la compensación pagada a Sevilla. Determinó que de los $61,786.57 gastados por el Fondo, éste sólo podía recobrar $33,982.61. Es decir, al reembolso del Fondo se le restó un 45% correspondiente a la negligencia del propio obrero, por lo que el Fondo sólo recibiría el 55% de lo invertido en su tratamiento y compensación. La cantidad a pagársele al Fondo provendría de la indemnización que Santa Marina S.E., el Municipio y su conductor le debían a Sevilla.

Por no estar de acuerdo con lo resuelto por el foro apelativo, el Fondo acudió ante nos oportunamente y planteó, en esencia, que el Tribunal de Circuito de Apelaciones había errado al reducir por 45% la cantidad que el Fondo tenía derecho a recobrar conforme a lo dispuesto por el Art. 31 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra.*

El 10 de agosto de 2001 expedimos el recurso de *certiorari* que solicitó el Fondo, a fin de revisar el dictamen del foro apelativo de 30 de marzo de 2001 en este caso. El 20 de diciembre de 2001 la parte peticionaria solicitó que su petición de *certiorari* se aceptara como su alegato, a lo que accedimos. La parte recurrida presentó el suyo el 6 de febrero de 2002. Con la comparecencia de ambas partes, pasamos a resolver.

## II

Como se sabe, la Ley del Sistema de Compensaciones por Accidentes del Trabajo establece un esquema de seguro compulsorio mediante el cual los empleados que trabajan para patronos asegurados y que sufran lesiones, se inutilicen o pierdan la vida por accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo, son acreedores de los amplios remedios compensa-

torios que provee esta Ley. Los obreros tienen derecho a recibir los beneficios del estatuto, independientemente de que se pueda demostrar que la lesión sobrevino por la negligencia de alguna persona. A cambio de esto, los patronos gozan de inmunidad con respecto a acciones de daños y perjuicios presentadas por el obrero afectado con relación a su lesión. Este *quid pro quo* es el eje central del esquema del seguro compulsorio. *Hurtado v. Osuna*, 138 D.P.R. 801 (1995).

■ Como parte del esquema referido, de ordinario la Ley no provee para que el obrero lesionado reembolse al Fondo los gastos de tratamiento médico y compensación en los que incurrió si el accidente está relacionado con el empleo. Le corresponde al Fondo asumir la responsabilidad de ofrecer tratamiento médico y compensar al obrero, según dispone la Ley *sin derecho a reembolso alguno*.

■ Sin embargo, cuando existe un *tercero responsable* de un accidente laboral, la Ley dispone un procedimiento mediante el cual el Fondo puede subrogarse en los derechos del obrero o de sus beneficiarios, y así poderle reclamar al tercero responsable los daños que compensó o los gastos en los que incurrió, relacionados al accidente de trabajo. *Padín v. Cía. Fom. Ind.*, 150 D.P.R. 403 (2000).

En el caso de terceros, el Art. 31 de la Ley dispone, en lo pertinente:

> Cuando un obrero o empleado lesionado, o sus beneficiarios en casos de muerte, tuvieren derecho a entablar acción por daños contra tercero, en los casos en que el Fondo del Seguro del Estado, de acuerdo con los términos de este capítulo, estuviere obligado a compensar en alguna forma, o a proporcionar tratamiento, el Administrador del Fondo del Seguro del Estado se subrogará en los derechos del obrero o empleado, o de sus beneficiarios, y podrá entablar procedimientos en contra del tercero en nombre del obrero o empleado, o de sus beneficiarios, dentro de los noventa (90) días siguientes a la fecha en que la decisión fuere firme y ejecutoria, *y cualquier suma que como resultado de la acción, o a virtud de transacción judicial o extrajudicial se obtuviere en exceso de los gastos incurridos*

*en el caso se entregará al obrero o empleado lesionado o a sus beneficiarios con derecho a la misma. ...*

*Si el Administrador dejare de entablar demanda contra la tercera persona responsable,* según se ha expresado en el párrafo anterior, el obrero o empleado, o sus beneficiarios quedarán en libertad completa para entablar tal demanda en su beneficio, *sin que vengan obligados a resarcir al Fondo del Seguro del Estado por los gastos incurridos en el caso.*

.    .    .    .    .    .    .    .    .

*Ninguna transacción que pueda llevarse a cabo entre el obrero o empleado lesionado,* o sus beneficiarios en caso de muerte, y *el tercero responsable,* dentro de los noventa (90) días subsiguientes a la fecha en que la decisión fuere firme y ejecutoria, o después de expirado dicho término *si el Administrador hubiere presentado su demanda,* tendrá valor y eficacia en derecho *a menos que se satisfagan previamente los gastos incurridos por el Fondo del Seguro del Estado en el caso*; y no se dictará sentencia en pleitos de esta naturaleza, ni se aprobará transacción alguna con relación a los derechos de las partes en dichos pleitos sin hacer reserva expresa del derecho del Fondo del Seguro del Estado a reembolso de todos los gastos incurridos; Disponiéndose que el secretario de la sala que conozca de alguna reclamación de la naturaleza antes descrita notificará al Administrador del Fondo del Seguro del Estado sobre cualquier providencia dictada por el tribunal que afecte los derechos de las partes en el caso, así como de la disposición final que del mismo se hiciere. (Énfasis suplido.) 11 L.P.R.A. sec. 32.

■ Como puede observarse, la Ley nada dispone específicamente sobre los derechos del Fondo con respecto a recuperar los gastos en los que incurrió cuando el propio obrero lesionado comparte con un tercero la responsabilidad por un accidente. Se deduce claramente de la Ley que si no existe un tercero responsable, el Fondo asumirá la totalidad de los gastos aludidos, independientemente de si el obrero fue o no negligente. En cambio, si ha habido un tercero que es el responsable de la lesión del obrero, entonces el Fondo tiene un claro derecho a recobrar lo que gastó en el tratamiento del obrero. La Ley no distingue sobre este particular en cuanto a qué puede recobrar el Fondo cuando el obrero es parcialmente negligente conjunta-

mente con un tercero. Por el carácter claro y tajante de los términos de la Ley en cuanto al derecho del Fondo a recobrar cuando está involucrado un tercero, se puede inferir que el Fondo tiene derecho a recobrar *genéricamente* en tales casos. Es decir, que el Fondo puede recobrar en cualquier caso en que un tercero incurra en responsabilidad por un accidente laboral. Donde la Ley no distingue o excluye, no procede distinguir. Véanse, además: *Lasalle v. Junta Dir. A.C.A.A.*, 140 D.P.R. 694 (1996); *Román v. Superintendente de la Policía*, 93 D.P.R. 685 (1966).

■ En efecto, con respecto a casos de terceros responsables cuando el obrero también es parcialmente negligente, nuestra jurisprudencia tiene expresiones normativas claras que son pertinentes al asunto que aquí nos concierne, de las cuales puede deducirse la pauta que debemos aplicar en el caso de autos. Así, pues, en situaciones diversas en las que esté involucrado un tercero y el Fondo se haya subrogado los derechos del empleado lesionado para demandar a ese tercero responsable, hemos enfatizado *sin excepción alguna* que de la indemnización que se obtenga de la acción que incoe el Fondo se resarcirán primero todos los desembolsos *que este haya realizado* con respecto al empleado lesionado, y entonces el *sobrante* corresponderá al empleado o a sus familiares. En los casos aludidos, el tercero era totalmente responsable de la lesión del obrero, o compartía la responsabilidad junto con otro empleado del patrono, pero nuestros pronunciamientos normativos sobre el claro derecho del Fondo al recobrar la totalidad de sus gastos fueron idénticos en ambos casos, sin que importase para ello que la responsabilidad del tercero fuese total o compartida. Por esto, es evidente de lo que hemos resuelto antes que en casos de subrogación por parte del Fondo: éste *siempre* tiene un derecho *prioritario* al reembolso *de todo* lo que haya gastado en la atención médica y en la compensación del empleado lesionado. *Resto Casillas v. Colón González*, 112 D.P.R. 644 (1982); *Vda. de*

*Andino v. A.F.F.*, 93 D.P.R. 170 (1966). El derecho del empleado o de sus familiares cuando un tercero es de algún modo responsable de sus daños es sólo al sobrante que haya luego de que el Fondo demandante se haya resarcido de todos los desembolsos realizados en beneficio del empleado lesionado.

■    También surge palmariamente de la jurisprudencia citada que la acción del Fondo contra el tercero responsable es *"una acción de daños y perjuicios común"*, en la cual el tercero está obligado a indemnizar el daño *"sólo en proporción a su propia culpa y al grado en que colaboró a producirlo"*. (Énfasis suplido.) *Resto Casillas v. Colón González*, supra, pág. 648; *Vda. de Andino v. A.F.F.*, supra, pág. 182.

Los principios aludidos sentados ya en nuestra jurisprudencia atienden debidamente los varios intereses sociales que deben protegerse en situaciones como las del caso de autos. Se promueve la solvencia de una institución tan importante como es el Fondo, a la vez que se responsabiliza al tercero por lo que le corresponde precisamente del daño que sufra el trabajador, y se indemniza y atiende a éste adecuadamente sin incurrir en doble compensación. Véase D. Hurst Neill, *Employer Subrogation: The Effect of Injured Employee Negligence In Workers' Compensation / Third Party Actions*, 18 (Núm. 2) San Diego L. Rev. 301 (marzo 1981).

Para concluir la formulación de la normativa aplicable a casos como el de autos, debe señalarse que en las jurisdicciones norteamericanas, de donde procede nuestro derecho de compensación por accidentes del trabajo, la norma prevaleciente en situaciones como las que aquí nos concierne es que cuando existe responsabilidad compartida entre un tercero y el propio obrero por un accidente laboral, el asegurador que proveyó tratamiento médico y la compensación al obrero lesionado tiene derecho a recobrar la *totalidad* de los desembolsos que hizo para tales fines. 7

*Larson's, Worker's Compensation Law* Sec. 120.02(2) (2002). Nuestra propia norma, pues, es cónsona con la que prevalece en las jurisdicciones estatales de Estados Unidos. Véanse: *Jarvis v. Southern Pac Transp. Co.*, 142 Cal. App.3rd 246 (1983); *Land v. George Schmidt Co.*, 333 N.W.2d 30 (1982); *Kemerer v. Challenge Milk Co.*, 105 Cal. App. 334 (1980).

## III

En el caso de autos, el obrero Sevilla tiene derecho a una indemnización de 55% de los daños sufridos, que corresponde a la proporción de la negligencia conjunta de los terceros Santa Marina S.E. (35%) y el Municipio (20%). De esa indemnización se debe descontar primero la *totalidad* del dinero que el Fondo invirtió en el tratamiento y en la compensación de Sevilla; es decir, $61,576.57, tal como lo decidió el foro de instancia. Erró el Tribunal de Circuito de Apelaciones al resolver que de su indemnización Sevilla sólo tenía que reembolsar el 55% de los gastos del Fondo. Tal dictamen del foro apelativo no sólo contraviene el claro lenguaje de la Ley, sino que es contrario, además, a nuestros pronunciamientos jurisprudenciales citados antes y al importante interés social en preservar la solvencia económica del Fondo. Asimismo, determinar que el obrero, quien recibió ya los beneficios del Fondo, sólo tiene que reembolsar parte de ellos a pesar de haber sido parcialmente responsable de los daños que sufrió, representaría concederle a éste una doble compensación, lo que no tiene fundamento jurídico alguno que lo justifique. Nótese, además, que si el obrero Sevilla no hubiese incurrido en ninguna negligencia de su parte en el accidente del caso de autos, aun así hubiese procedido que de la indemnización que debe pagar el tercero responsable se descontase la totalidad de los gastos del Fondo. Esto surge claramente de la Ley. Si ello es así cuando no media negligencia alguna de parte del trabaja-

dor, tanto más patente es la obligación de reembolsar la totalidad de los gastos del Fondo cuando el propio trabajador ha sido parcialmente responsable de su lesión.

Debe aclararse, sin embargo, que en los casos en que un tercero es total o parcialmente responsable de los daños que sufre un trabajador, al computarse el monto de la indemnización que le corresponde pagar al tercero es menester incluir en tal cómputo el valor de aquellos gastos del Fondo que hubiesen sido recobrables en casos ordinarios de daños y perjuicios. *El Fondo no existe para relevar a terceros de la indemnización por aquellos daños que hayan causado y que el Fondo remedió.* Así, pues, si el obrero sufrió daños físicos y su tratamiento médico-hospitalario lo sufragó el Fondo, el valor de los gastos por tal tratamiento se debe incluir como parte de la indemnización que debe pagar el tercero responsable. De igual modo, si el Fondo compensa al obrero por alguna incapacidad resultante del accidente que el tercero causó, el valor de esa compensación también se debe incluir como parte del monto de la indemnización que el tercero responsable debe hacer. Se debe proceder tal como sucedería en una acción común de daños y perjuicios si el Fondo no existiera, o como sucedería comúnmente en casos que no involucran accidentes del trabajo. Véanse: *Resto Casillas v. Colón González*, supra; *Vda. de Andino v. A.F.F.*, supra. Ello es particularmente así en vista de que en nuestra jurisdicción rige la doctrina de la fuente colateral (*collateral source doctrine*), con arreglo a la cual el causante de un daño está impedido de deducir del importe de la indemnización de la cual responde la compensación o el beneficio que haya recibido el perjudicado de una tercera persona o entidad, esto es, de una fuente no relacionada con el demandado. *Nieves Cruz v. U.P.R.*, 151 D.P.R. 150 (2000); *Futurama Import Corp. v. Trans Caribbean*, 104 D.P.R. 609, 611–612 (1976); *Goose v. Hilton Hotels*, 79 D.P.R. 523 (1956); *Pereira v. Commercial*

*Transport Co.*, 70 D.P.R. 641 (1949); *Reyes v. Aponte*, 60 D.P.R. 890 (1942).

En resumen, pues, en casos de subrogación por el Fondo como el de autos, de la indemnización que le toca pagar al tercero por su responsabilidad en el accidente del trabajo se le reembolsará primero al Fondo la totalidad de los gastos en los que incurrió en el tratamiento y en la compensación del obrero lesionado, y el sobrante de esa indemnización le corresponderá al obrero o a sus familiares. La indemnización referida se computará, incluso todas las partidas que procedan de ordinario en casos comunes de daños y perjuicios, sin que importe que el Fondo haya anticipado al obrero algunos elementos de tal indemnización, que éste habrá de reembolsarle a esa agencia.

Por los fundamentos expuestos, *se dictará sentencia para dejar sin efecto el dictamen del foro apelativo y para devolver el caso al foro de instancia para que éste disponga cualquier remedio adicional a lo ya ordenado por ese foro, que sea conforme con lo aquí resuelto.*

Los Jueces Asociados Señores Rivera Pérez y Hernández Denton concurrieron sin opinión escrita. El Juez Asociado Señor Rebollo López no intervino.