EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Antonio Sevilla Rivera, et als.<br>Demandantes-Recurridos<br><br>v.<br><br>Municipio de Toa Alta, et al.<br>Demandados y Terceros<br>Demandantes-Recurridos<br><br>v.<br><br>Santa Marina, S.E., et al.<br>Demandados-Recurridos<br><br>v.<br><br>Corporación del F.S.E.<br>Interventora Peticionaria | Certiorari<br><br>2003 TSPR 109<br><br>159 DPR _____ |

Número del Caso: CC-2001-488

Fecha: 20 de junio de 2003

Tribunal de Circuito de Apelaciones:
           Circuito Regional II

Juez Ponente:
           Hon. Nydia Cotto Vives

Abogada de la Parte Interventora Peticionaria:
           Lcda. Marta Meléndez Ramos

Abogado de la Parte Demandantes-Recurridos:
           Lcdo. Jorge Miguel Suro Ballester

Abogada de la Parte Demandados-Recurridos:
           Lcda. Milagros del Carmen López

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Antonio Sevilla Rivera, Et Als.
    Demandantes-Recurridos

            vs.

Municipio de Toa Alta, Et Al.
    Demandados y Terceros
    Demandantes-Recurridos

            vs.                          CC-2001-488     Certiorari

Santa Marina, S.E., Et Al.
    Demandados-Recurridos

            vs.

Corporación del F.S.E.
   Interventora Peticionaria


Opinión del Tribunal emitida por el Juez Asociado SEÑOR FUSTER BERLINGERI.


San Juan, Puerto Rico, a 20 de junio de 2003.


Tenemos la ocasión para resolver si en una acción de subrogación por un accidente del trabajo ocasionado **por la negligencia compartida** de un tercero y del propio obrero afectado, procede cobrar de la indemnización obtenida el reembolso de **todos** los gastos incurridos por la Corporación del Fondo del Seguro del Estado (el Fondo) en el tratamiento y la compensación del obrero.

I

El caso de autos gira en torno a un accidente de automóvil como resultado del cual un jardinero empleado de RVT Maintenance Inc. de nombre

Antonio Sevilla (en adelante, Sevilla) fue atropellado por un vehículo propiedad del Municipio de Toa Alta. Sevilla sufrió múltiples lesiones como consecuencia del accidente, y quedó totalmente incapacitado para trabajar (100%), según lo determinó posteriormente el Fondo. En parte, el accidente referido ocurrió debido a que en un área de siembra de dominio público, Santa Marina S.E., propietaria de un edificio conocido como Anexo El Nuevo Día, había sembrado sin autorización unos arbustos frondosos que obstruían la visibilidad en sus alrededores.

El 10 de marzo de 1995 Sevilla, su madre y sus tres hermanas presentaron ante el Tribunal de Primera Instancia una demanda en daños y perjuicios contra el Municipio de Toa Alta y su compañía aseguradora. Los referidos demandados a su vez trajeron a Santa Marina, S.E. como terceros demandados. Como al momento de ocurrir el accidente Sevilla se encontraba realizando labores para beneficio de su propio patrono, el Administrador del Fondo presentó una demanda de intervención para subrogarse en los derechos del obrero lesionado y reclamar los gastos incurridos en el tratamiento médico y la compensación a Sevilla, ascendentes a $61,786.57, al amparo del Art. 31 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 del 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 32 (en adelante la Ley).

El 22 de diciembre de 1998 el Tribunal de Primera Instancia, Sala Superior de Bayamón, dictó una sentencia en el pleito correspondiente, mediante la cual le imputó

responsabilidad por el accidente en un 45% al propio obrero Sevilla, en un 20% al Municipio de Toa Alta y a su conductor, y en un 35% a Santa Marina, S.E. El tribunal estimó que los daños sufridos por los demandantes por la ocurrencia del accidente ascendían a $801,334. Resolvió, además, que Sevilla absorbería el 45% de dicha cantidad por razón de su propia negligencia. También determinó que de los $440,734 remanentes que el Municipio y Santa Marina debían satisfacer conjuntamente a Sevilla, se deducirían $61,5076.57; es decir, el 100% del dinero invertido por el Fondo en el tratamiento y la compensación de Sevilla.

Tanto la parte demandante, como los terceros demandados Santa Marina, S.E. y su aseguradora, acudieron a la vez con sus propios recursos de apelación ante el Tribunal de Circuito de Apelaciones. En el recurso que aquí nos concierne, la parte demandante, en esencia, cuestionó que de su indemnización se fuera a deducir **el 100% de la referida cantidad invertida por el Fondo**.

El Tribunal de Circuito de Apelaciones acogió el planteamiento de Sevilla y modificó lo referente a la cantidad que el Fondo podía recobrar de la compensación pagada a Sevilla. Determinó que de los $61,786.57 gastados por el Fondo, éste sólo podía recobrar $33,982.61. Es decir, al reembolso del Fondo se le restó un 45% correspondiente a la negligencia del propio obrero, por lo que el Fondo sólo recibiría el 55% de lo invertido en su tratamiento y compensación. La cantidad a pagársele al Fondo provendría de

la indemnización debida a Sevilla por Santa Marina, S.E. y por el Municipio de Toa Alta y su conductor.

Por no estar de acuerdo con lo resuelto por el foro apelativo, el Fondo acudió ante nos oportunamente y planteó, en esencia, que el Tribunal de Circuito de Apelaciones había errado al reducir por 45% la cantidad que el Fondo tenía derecho a recobrar conforme a lo dispuesto por el Art. 31 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 32.

El 10 de agosto de 2001 expedimos el recurso de *certiorari* solicitado por el Fondo a fin de revisar el dictamen del foro apelativo del 30 de marzo de 2001 en este caso. El 20 de diciembre de 2001 la parte peticionaria solicitó que su petición de *certiorari* se aceptara como su alegato, a lo que accedimos. La parte recurrida presentó el suyo el 6 de febrero de 2002. Con la comparecencia de ambas partes pasamos a resolver.

II

Como se sabe, la Ley de Compensaciones por Accidentes de Trabajo establece un esquema de seguro compulsorio mediante el cual los empleados que trabajan para patronos asegurados y que sufran lesiones, se inutilicen o pierdan la vida por accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo, son acreedores de los amplios remedios compensatorios provistos por dicha Ley. Los obreros tienen derecho a recibir los beneficios del estatuto,

independientemente de que pueda demostrarse que la lesión sobrevino por la negligencia de alguna persona. A cambio de esto, los patronos gozan de inmunidad con respecto a acciones de daños y perjuicios presentadas por el obrero afectado con relación a su lesión. Este *quid pro quo* es el eje central del esquema del seguro compulsorio. Hurtado v. Osuna, 138 D.P.R. 801 (1995).

Como parte del esquema referido, de ordinario la Ley no provee para que el obrero lesionado reembolse al Fondo los gastos incurridos en el tratamiento médico y compensación si el accidente está relacionado con el empleo. Le corresponde al Fondo asumir la responsabilidad de ofrecer tratamiento médico y compensar al obrero según dispone la Ley **sin derecho a reembolso alguno.**

Sin embargo, cuando existe un **tercero responsable** del accidente laboral la Ley dispone un procedimiento mediante el cual el Fondo puede subrogarse en los derechos del obrero o de sus beneficiarios y así poder reclamar del tercero responsable los daños compensados o gastos incurridos relacionados al accidente de trabajo. Padín v. Cía. Fom. Ind., res. el 25 de febrero de 2000, 150 D.P.R. ____, 2000 TSPR 32, 2000 JTS 44.

En el caso de terceros, el Art.31 de la Ley dispone, en lo pertinente:

> . . .

> Cuando un obrero o empleado lesionado, o sus beneficiarios en caso de muerte, tuvieren derecho a entablar acción por daños contra terceros, en los casos en que el Fondo del

seguro del Estado, de acuerdo con los términos de éste Capítulo, estuviere obligado a compensar en alguna forma, o a proporcionar tratamiento, el Administrador del Fondo del seguro del Estado se subrogará en los derechos del obrero o empleado, o de sus beneficiarios, y podrá entablar procedimientos en contra del tercero en nombre del obrero o empleado, o de sus beneficiarios, dentro de los (90) días siguientes a la fecha en que la decisión fuere firme y ejecutoria, **y cualquier suma que como resultado de la acción, o a virtud de transacción judicial o extrajudicial se obtuviere en exceso de los gastos incurridos en el caso se entregará al obrero o empleado lesionado o a sus beneficiarios con derecho a la misma. . . .**

**<u>Si el Administrador dejare de entablar demanda contra la tercera persona responsable</u>**, según se ha expresado en el párrafo anterior, el obrero o empleado, o sus beneficiarios quedarán en libertad completa para entablar tal demanda en su beneficio, **<u>sin que vengan obligados a resarcir al Fondo del Seguro del Estado por los gastos incurridos en el caso</u>**.

. . .

**Ninguna transacción que pueda llevarse a cabo entre el obrero o empleado lesionado**, o sus beneficiarios en caso de muerte, y **el tercero responsable**, dentro de los (90) dias subsiguientes a la fecha en que la decisión fuere firme y ejecutoria, o después de expirado dicho término **si el Administrador hubiere presentado su demanda, tendrá valor y eficacia en derecho a menos que se satisfagan previamente los gastos incurridos por el Fondo del Seguro del Estado en el caso**; y no se dictará sentencia en pleitos de esta naturaleza, ni se aprobará transacción alguna con relación a los derechos de las partes dichos pleitos sin hacer reserva expresa del derecho del Fondo del Seguro del Estado a reembolso de todos los gastos incurridos; disponiéndose que el secretario de la sala que conozca de alguna reclamación de la naturaleza antes descrita notificará al Administrador del Fondo del Seguro del Estado sobre cualquier providencia dictada por el tribunal que afecte los derechos de las partes en el caso, así como de la disposición final que del mismo se hiciere. (Énfasis suplido). 11 L.P.R.A. sec. 32.

Como puede observarse, la Ley nada dispone específicamente sobre los derechos del Fondo con respecto a recuperar los gastos incurridos por éste cuando el propio obrero lesionado comparte con un tercero la responsabilidad por un accidente. Se desprende claramente de la Ley que si no existe un tercero responsable, el Fondo asumirá la totalidad de los gastos aludidos independientemente de si el obrero fue o no negligente. En cambio, si ha habido un tercero que es el responsable de la lesión del obrero, entonces el Fondo tiene un claro derecho a recobrar lo que gastó en el tratamiento del obrero. La Ley no distingue sobre este particular en cuánto a qué puede recobrar el Fondo cuando el obrero es parcialmente negligente conjuntamente con un tercero. Por el carácter claro y tajante de los términos de la Ley en cuanto al derecho del Fondo a recobrar cuando está involucrado un tercero, puede inferirse que el Fondo tiene derecho a recobrar **genéricamente** en tales casos. Es decir, que el Fondo puede recobrar en cualquier caso en que un tercero incurra en responsabilidad por un accidente laboral. Donde la Ley no distingue o excluye, no procede distinguir. Véase, además, Lasalle v. Junta Dir. A.C.A.A., 140 D.P.R. 694 (1994); Román v. Superintendente de la Policía, 93 D.P.R. 685 (1966).

En efecto, con respecto a casos de terceros responsables cuando el obrero también es parcialmente negligente, nuestra jurisprudencia tiene expresiones normativas claras que son pertinentes al asunto que aquí nos concierne, de las cuales puede deducirse la pauta que debemos aplicar en el caso de

autos. Así pues, en situaciones diversas en las que estaba involucrado un tercero, habiéndose subrogado el Fondo en los derechos del empleado lesionado para demandar a dicho tercero responsable, hemos enfatizado **sin excepción alguna** que de la indemnización que se obtenga de la acción incoada por el Fondo **se resarcirán primero todos los desembolsos realizados por el Fondo** con respecto al empleado lesionado, y entonces el **sobrante** que hubiese corresponderá al empleado o sus familiares. En los casos aludidos el tercero era totalmente responsable de la lesión del obrero, o compartía la responsabilidad junto con otro empleado del patrono, pero nuestros pronunciamientos normativos sobre el claro derecho del Fondo al recobrar la totalidad de sus gastos fueron idénticos en ambos casos, sin que importase para ello que la responsabilidad del tercero fuese total o compartida. Por esto, es evidente de lo que hemos resuelto antes que en casos de subrogación por el Fondo, éste **siempre** tiene un derecho **prioritario** al reembolso **de todo** lo que haya gastado en la atención médica y en la compensación del empleado lesionado. Resto Casillas v. Colón González, 112 D.P.R. 644 (1982); Vda. de Andino v. A.F.F., 93 D.P.R. 170 (1966). El derecho del empleado o de sus familiares cuando un tercero es de algún modo responsable de sus daños es sólo al sobrante que hubiere luego de que el Fondo demandante se haya resarcido de todos los desembolsos realizados en beneficio del empleado lesionado.

También surge palmariamente de la jurisprudencia citada que la acción del Fondo contra el tercero responsable es **"una acción común de daños y perjuicios"**, en la cual el tercero está obligado a indemnizar el daño **"sólo en proporción a su propia culpa y al grado en que colaboró a producirlo"**. Resto Casillas v. Colón González, *supra*, pág. 648; Vda. de Andino v. A.F.F., *supra*, pág. 182.

Los principio aludidos sentados ya en nuestra jurisprudencia atienden debidamente los varios intereses sociales que deben protegerse en situaciones como las del caso de autos. Se promueve la solvencia de una institución tan importante como es el Fondo del Seguro del Estado a la vez que se responsabiliza al tercero por lo que le corresponde precisamente del daño sufrido por el trabajador y se indemniza y atiende a éste adecuadamente, sin incurrir en doble compensación. Véase, D. Hurst Neill, *Employer Subrogation: The Effect of Injured Employee Negligence In Worker's Compensation/Third Party Actions*, 18 San Diego Law Rev. 301 (1981).

Para concluir la formulación de la normativa aplicable a casos como el de autos, debe señalarse que en las jurisdicciones norteamericanas, de donde procede nuestro derecho de compensación por accidentes del trabajo, la norma prevaleciente en situaciones como las que aquí nos concierne es que cuando existe responsabilidad compartida entre un tercero y el propio obrero por un accidente laboral, el asegurador que proveyó tratamiento médico y la compensación

al obrero lesionado tiene derecho a recobrar la **totalidad** de los desembolsos que hizo para tales fines. Larson's, *Workers' Compensation Law*, (Matthew Bender, 2002) Vol. 7, Cap. 120, Secc. 120.02(2). Nuestra propia norma, pues, es cónsona con la que prevalece en las jurisdicciones estatales de Estados Unidos. Véase, Jarvis v. Southern Pac Transp. Co., 142 Cal. App. 3rd 246 (1983); Land v. George Schmidt Co., 333 N.W. 2d. 30 (1982); Kemerer v. Challenge Milk Co., 105 Cal. App. 334 (1980).

## III

En el caso de autos, el obrero Sevilla tiene derecho a una indemnización de 55% de los daños sufridos, que corresponde a la proporción de la negligencia conjunta de los terceros Santa Marina, S.E. (35%) y el Municipio de Toa Alta (20%). De esa indemnización debe descontarse primero la **totalidad** del dinero invertido por el Fondo en el tratamiento y compensación de Sevilla; es decir, $61,576.57, tal como lo decidió el foro de instancia. Erró el Tribunal de Circuito de Apelaciones al resolver que de su indemnización Sevilla sólo tenía que reembolsar el 55% de los gastos del Fondo. Tal dictamen del foro apelativo no sólo contraviene el claro lenguaje de la Ley, sino que es contrario, además, a nuestros pronunciamientos jurisprudenciales citados antes y al importante interés social en preservar la solvencia económica del Fondo. Asimismo, determinar que el obrero, quien recibió ya los beneficios del Fondo, sólo tiene que reembolsar parte de ellos a pesar de haber sido parcialmente responsable de

los daños que sufrió, representaría concederle a éste una doble compensación, lo que no tiene fundamento jurídico alguno que lo justifique. Nótese, además, que si el obrero Sevilla no hubiese incurrido en ninguna negligencia de su parte en el accidente del caso de autos, aun así hubiese procedido que de la indemnización que debe pagar el tercero responsable se descontase la totalidad de los gastos del Fondo. Esto surge claramente de la Ley. Si ello es así cuando no media negligencia alguna de parte del trabajador, tanto más patente es la obligación de reembolsar la totalidad de los gastos del Fondo cuando el propio trabajador ha sido parcialmente responsable de su lesión.

Debe aclararse, sin embargo, que en los casos en que un tercero es total o parcialmente responsable de los daños sufridos por un trabajador, al computarse el monto de la indemnización que le corresponde pagar al tercero es menester incluir en tal cómputo el valor de aquellos gastos del Fondo que hubiesen sido recobrables en casos ordinarios de daños y perjuicios. **El Fondo no existe para relevar a terceros de la indemnización de aquellos daños causados por éstos que el Fondo remedió.** Así pues, si el obrero sufrió daños físicos cuyo tratamiento médico-hospitalario fue sufragado por el Fondo, el valor de los gastos por tal tratamiento debe ser incluido como parte de la indemnización que debe pagar el tercero responsable. De igual modo, si el Fondo compensa al obrero por alguna incapacidad resultante del accidente que el tercero causó, el valor de esa compensación también debe

incluirse como parte del monto de la indemnización que el tercero responsable debe hacer. Debe procederse tal como sucedería en una acción común de daños y perjuicios si el Fondo no existiera, o como sucedería comúnmente en casos que no involucran accidentes del trabajo. Véase, Resto Casillas v. Colón González, *supra*; Vda. de Andino v. A.F.F., *supra*. Ello es particularmente así en vista de que en nuestra jurisdicción rige la doctrina de la fuente colateral ("*collateral source doctrine*"), con arreglo a la cual el causante de un daño está impedido de deducir del importe de la indemnización de la cual responde, la compensación o beneficio que haya recibido el perjudicado de una tercera persona o entidad, esto es de una fuente no relacionada con el demandado. Nieves Cruz v. U.P.R., res. el 31 de mayo de 2000, 151 D.P.R. ___, 2000 TSPR 78, 2000 JTS 91; Futurama Import Corp. v. Trans Caribbean, 104 D.P.R. 609, 611-612 (1976); Goose v. Hilton Hotels, 79 D.P.R. 523 (1956); Pereira v. Commercial Transport Co., 70 D.P.R. 641 (1949); Reyes v. Aponte, 60 D.P.R. 890 (1942).

En resumen, pues, en casos de subrogación por el Fondo como el de autos, de la indemnización que le toca pagar al tercero por su responsabilidad en el accidente del trabajo, se le reembolsará primero al Fondo la totalidad de los gastos incurridos por éste en el tratamiento y la compensación del obrero lesionado, y el sobrante de esa indemnización le corresponderá al obrero o sus familiares. La indemnización referida se computará incluyendo todas las partidas que

procedan de ordinario en casos comunes de daños y perjuicios, sin que importe que el Fondo haya anticipado al obrero algunos elementos de tal indemnización, que éste habrá de reembolsarle a dicha agencia.

Por los fundamentos expuestos, se dictará sentencia para dejar sin efecto el dictamen del foro apelativo, y para devolver el caso al foro de instancia para que éste disponga cualquier remedio adicional a lo ya ordenado por dicho foro, que sea conforme con lo aquí resuelto.


JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Antonio Sevilla Rivera, Et Als.
      Demandantes-Recurridos

                vs.

Municipio de Toa Alta, Et Al.
      Demandados y Terceros
      Demandantes-Recurridos

                vs.                      CC-2001-488          Certiorari

Santa Marina, S.E., Et Al.
      Demandados-Recurridos

                vs.

Corporación del F.S.E.
    Interventora Peticionaria


                              SENTENCIA


            San Juan, Puerto Rico, a 20 de junio de 2003.


            Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se deja sin efecto el dictamen del Tribunal de Circuito de Apelaciones, Circuito Regional II de Bayamón; y se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Bayamón, para que éste disponga cualquier remedio adicional a lo ya ordenado por dicho foro, que sea conforme con lo aquí resuelto.

            Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez concurre sin opinión escrita. El Juez Asociado señor Hernández Denton disiente sin opinión escrita. El Juez Asociado señor Rebollo López no intervino.


                              Patricia Otón Olivieri
                            Secretaria del Tribunal Supremo