EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Estrella Graulau Matos, etc.<br><br>    Demandantes-Peticionarios<br><br>v.<br><br>Edith Latorre Thelmont, etc.<br><br>  Demandados-Recurridos | Certiorari<br><br>2004 TSPR 132<br><br>162 DPR \_\_\_\_ |

Número del Caso: CC-2003-464

Fecha: 10 de agosto de 2004

Tribunal de Circuito de Apelaciones:

            Circuito Regional I

Juez Ponente:

            Hon. Charles A. Cordero Peña

Abogada de la Parte Peticionaria:

            Lcda. Miriam Ramos Grateroles

Abogados de la Parte Recurrida:

            Lcdo. Luis Edwin González Ortiz
            Lcda. Belén Guerrero Calderón

Materia: Reclamación, Participación y Adjudicación de    Herencia

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Estrella Graulau Matos,
Etc.

    Demandantes-Peticionarios


        vs.                                CC-2003-464          Certiorari


Edith Latorre Thelmont, Etc.

    Demandados-Recurridos


Opinión del Tribunal emitida por el Juez Asociado SEÑOR FUSTER BERLINGERI.


San Juan, Puerto Rico, a 10 de agosto de 2004.


Tenemos la ocasión para interpretar por primera vez el Art. 758 del Código Civil de Puerto Rico a los fines de resolver si para ejercer la facultad de mejorar a un hijo común luego de fallecer el causante, otorgada en un pacto de capitulaciones matrimoniales, es necesario que la cónyuge supérstite se encuentre en estado de viudez al momento de efectuar la mejora.


I

Rafael Hernández Torres estuvo casado en primeras nupcias con Estrella Graulau (en adelante Graulau) y procrearon dos hijos, Rafael Moisés y Marie Claire Hernández Graulau. Dicho vínculo

matrimonial fue disuelto y el 27 de julio de 1990 Hernández Torres contrajo segundas nupcias con Edith Latorre Thelmont (en adelante Latorre) bajo el régimen económico de separación de bienes. El 5 de septiembre de 1995 Hernández Torres (en adelante el causante) murió intestado. Al momento del fallecimiento su segunda esposa se encontraba embarazada del único hijo procreado por ambos, el niño Rafael A. Hernández Latorre, quien nació el 18 de octubre de 1995.

El 7 de marzo de 1996 Graulau, en representación de sus hijos menores, instó una acción de reclamación, partición y adjudicación de herencia ante el Tribunal de Primera Instancia contra Latorre. Esta contestó la demanda y levantó como defensa afirmativa su facultad para mejorar al único hijo procreado entre ella y el causante, que había sido pactada por ambos el 13 de julio de 1990, en la octava cláusula de la escritura de capitulaciones matrimoniales otorgada por ella y Hernández Torres antes de casarse. Dicha cláusula lee así:

> **En caso de que el matrimonio entre los aquí comparecientes quedase disuelto por el fallecimiento de uno de éstos, el cónyuge sobreviviente tendrá el derecho a la cuota viudal usufructuaria que le concede la ley, disponiéndose y acordándose además que en tal caso podrá disponer del tercio de mejora con respecto a los bienes del caudal hereditario a favor de los hijos en común [que] pudieran tener los comparecientes, según provee el Código Civil de Puerto Rico en sus secciones 2393 y 2398, según de aplicación, o respecto a cualquier otra disposición legal en armonía con la voluntad expresada en este documento.**

Así las cosas, Graulau presentó una demanda enmendada y alegó entonces que el pacto pre-matrimonial aludido era inaplicable al caso de autos debido a que entre la demandada y el causante sólo había un hijo común y éste no era susceptible de ser mejorado, en vista de que el Código Civil de Puerto Rico en su Artículo 758 establece que a la viuda se le puede dar potestad para mejorar los "hijos comunes", en plural, lo que excluye la mejora a un solo "hijo común".

Graulau también planteó que Latorre había contraído nuevas nupcias posterior a la muerte del causante, por lo que no cumplía con uno de los requisitos que establece el Código Civil para poder ejercer como viuda la facultad de mejorar a los hijos comunes.

Luego de varios incidentes procesales, el Tribunal de Primera Instancia dictó una resolución interlocutoria sobre la controversia y sostuvo la validez de la facultad de mejorar concedida por el causante a Latorre en las capitulaciones matrimoniales otorgadas por éstos. Declaró mejorado al niño Rafael Hernández Latorre en el haber hereditario de su padre. Determinó que la voluntad de las partes fue la de conceder al cónyuge supérstite la facultad de mejorar a los hijos que se procrearan en ese matrimonio, fuera uno sólo o más de uno. También determinó que el hecho de que Latorre hubiese contraído nuevas nupcias no era razón para coartarle el derecho a mejorar al niño habido en su matrimonio anterior con el causante, porque el momento y "status" matrimonial determinantes para ejercer la facultad

de mejorar eran aquellos vigentes al momento de fallecer el cónyuge causante.

Inconforme con dicho dictamen Graulau acudió al Tribunal de Circuito de Apelaciones. En esencia, planteó que en la partición del caudal hereditario no podía considerarse que el hijo del causante con Latorre hubiese sido mejorado porque el Art. 758 del Código Civil no era aplicable aquí, debido a las dos objeciones planteadas ante el foro de instancia.

El foro apelativo, sin embargo, se negó a expedir el recurso de Graulau por entender que su intervención sería inoportuna, porque "sólo provocaría un fraccionamiento indebido del pleito y una dilación en la solución del mismo". Graulau solicitó la reconsideración de tal dictamen insistiendo en que la intervención del foro apelativo en ese momento de ninguna forma provocaría una dilación en la solución del pleito de partición sino todo lo contrario. Adujo que si el foro apelativo no intervenía ahora, el foro de instancia procedería a realizar una partición errónea, a base de un hijo equivocadamente mejorado, lo que daría lugar a que tuviese que impugnar tal partición; y al ser ésta revocada, a volver al foro de instancia para que realizase de nuevo la partición del modo correcto. Explicó Graulau que continuar el pleito de partición, por lo tanto, sin que se resolviese el erróneo dictamen parcial del foro de instancia sobre la mejora en cuestión, conllevaría una duplicidad de esfuerzos.

No obstante el planteamiento de Graulau, el foro apelativo denegó la reconsideración aludida.

Graulau entonces acudió ante nos oportunamente mediante un recurso de certiorari y alegó como error lo siguiente:

**Erró el foro apelativo al abstenerse de resolver la interpretación de la cláusula en controversia, siendo la misma indispensable para hacer la partición de la herencia.**

El 16 de julio de 2003, la peticionaria también presentó una moción en auxilio de nuestra jurisdicción mediante la cual expresó que el foro de instancia había señalado ya una vista para el 8 de septiembre de 2003 a los fines de continuar con los procedimientos de partición; y que de celebrarse dicha vista antes de que este Foro adjudicase la petición de certiorari, convertiría en académica la controversia planteada en ella.

El 18 de julio de 2003 expedimos el auto solicitado a fin de revisar la resolución dictada el 17 de marzo de 2003 por el foro apelativo. El 27 de octubre de 2003 tuvimos que reiterar mediante una resolución que el caso de autos estaba paralizado, como efecto de nuestro dictamen del 18 de julio de 2003 mediante la cual expedimos el recurso solicitado por Graulau. Ello, debido a que el foro de instancia había vuelto a señalar una vista para continuar con el procedimiento de partición para el 10 de noviembre de 2003.

El 10 de noviembre de 2003 la peticionaria presentó su alegato y el 26 de noviembre de 2003 la recurrida presentó el suyo. El 13 de enero de 2004, compareció la defensora judicial del menor Hernández Latorre y presentó sus puntos de vista sobre el asunto de autos. Con la comparecencia de todas las partes pasamos a resolver.

II

De lo relatado antes, es evidente que la peticionaria tiene razón en cuanto a que para llevar a cabo la partición de la herencia en el caso de autos correctamente es **indispensable** resolver primero si el menor Rafael A. Hernández Latorre ha sido debidamente beneficiado con una mejora respecto al caudal hereditario de su padre. En el caso de autos, existen tres hijos del fallecido Rafael Hernández Torres, quienes tendrían derecho a una participación igual en la totalidad del referido caudal, como únicos herederos de su padre quien murió sin testar. Art. 895 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2643. Sin embargo, de haber sido **mejorado** uno de los tres hijos, como se alega aquí, entonces a ese hijo le correspondería una tercera parte del caudal, como mejora, más una participación igual a la de los otros dos hijos en el resto del caudal, como legítima. Art. 751 del Código Civil, 31 L.P.R.A. sec. 2391. El hijo mejorado, pues, tendría derecho a una parte del caudal hereditario sustancialmente mayor a la que le correspondería a los otros dos hijos. La partición de la herencia sería sustancialmente distinta, dependiendo de si uno de los tres hijos fue mejorado o no. Es por lo anterior, que resulta indispensable resolver tal asunto de manera firme y final para proceder correctamente a la partición solicitada en el caso de autos. Erró, pues, el foro apelativo al desestimar el recurso de apelación que le fue presentado por Graulau. Tal desestimación no habría de evitar dilaciones en la solución de este caso como supuso el foro apelativo; más bien las

crea, al dejar sin revisar un dictamen del foro de instancia que la parte peticionaria habría de cuestionar de nuevo, de haber completado dicho foro la partición en cuestión conforme al dictamen impugnado.

III

Nunca antes habíamos tenido la ocasión para interpretar el Art. 758 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2398, que permite que el cónyuge supérstite pueda mejorar a los hijos que tuvo con el causante si éste murió intestado, siempre que tal facultad haya sido pactada en capitulaciones matrimoniales. En nuestra jurisdicción, pues, no existen pautas jurisprudenciales de este Foro que le permitan a los tribunales *a quo* adjudicar con finalidad controversias como las del caso de autos. Ello explica en parte porqué, a la altura del 2004, está aún sin realizarse una partición hereditaria que se procuró judicialmente el 7 de marzo de 1996. Se trata de un asunto novel, que sólo este Tribunal puede adjudicar de manera terminante y que la parte interesada evidentemente ha de volver a traer ante nos, de no dilucidarse ahora en esta opinión.

Por lo anterior, y conscientes de que **"sin duda, la economía procesal es un pilar importante dentro de nuestro sistema procesal civil"**, Dávila, Rivera v. Antilles Shipping, Inc., 147 D.P.R. 483, 494 (1999), pasamos a resolver sin trámite ulterior la cuestión medular de derecho del caso de autos, que todas las partes han discutido extensamente en sus alegatos ante nos, tal como lo hemos hecho en otras

ocasiones. Véase, López Rosas v. C.E.E., res. el 30 de marzo de 2004, 161 D.P.R. ___, 2004 TSPR 47, 2004 JTS 56; Pérez v. Com. Rel. Trab. Serv. Púb., res. el 4 de octubre de 2002, 158 D.P.R. ___, 2002 TSPR 133, 2002 JTS 139.

IV

En el caso de autos, el foro de instancia determinó expresamente que el hecho de que Latorre hubiese contraído nuevas nupcias luego del fallecimiento del causante no le impedía ejercer posterior al nuevo matrimonio la facultad de mejorar prevista en el Art. 758 del Código Civil. Afirmó el foro de instancia que interpretar el Art. 758 de otro modo, como lo pedían los demandantes, "sería atar inexorablemente la posibilidad de que un cónyuge supérstite pueda rehacer su vida al trámite judicial de partición de herencia". Veamos si fue correcta tal determinación.

El Artículo 757 del Código Civil de Puerto Rico, 31 LPRA sec. 2397, dispone que:

> **"La facultad de mejorar no puede encomendarse a otro."**

Luego, el Artículo 758 del mismo código aclara que:

> No obstante lo dispuesto en la sección anterior, podrá válidamente pactarse, en capitulaciones matrimoniales, que muriendo intestado uno de los cónyuges, **pueda el viudo o viuda que no haya contraído nuevas nupcias, distribuir, a su prudente arbitrio, los bienes del difunto y mejorar en ellos a los hijos comunes, sin perjuicio de las legítimas y de las mejoras hechas en vida por el finado.** (Énfasis suplido.)

El Artículo 758 referido proviene del Artículo 831 del Código Civil Español, cuya letra lee así, en lo pertinente aquí:

No obstante lo dispuesto en el artículo anterior, podrá ordenarse en testamento o en capitulaciones matrimoniales que muriendo el cónyuge otorgante, pueda el viudo o viuda **que no haya contraído nuevas nupcias** distribuir, a su prudente arbitrio, los bienes del difunto y mejorar en ellos a los hijos comunes, sin perjuicio de las legítimas y de las mejoras y demás disposiciones del causante.

Comenta González Tejera que, en su origen, el propósito de esta modalidad de ordenar la mejora fue fomentar hacia el cónyuge supérstite el respeto y la lealtad de los hijos y los descendientes comunes, procurando así una armonía que impidiera los litigios en torno a los bienes de la herencia. Efraín González Tejera, *Derecho de Sucesiones*, Tomo II, Editorial de la Universidad de Puerto Rico, 2002, p.503, citando a Florencio García Goyena, *Concordia, Motivos y Comentarios al Código Civil Español*, artículo 900, Vol. III, pp 107 y ss.

Se ha señalado así mismo que "la finalidad de la cláusula se autorizaba, por sus efectos muy saludables en los países de Fueros, pues mantenían el respeto y dependencia de los hijos particularmente hacia su **madre viuda**; y se conservaba así la disciplina doméstica, [además] de que se evitaban los desastrosos juicios de testamentaria". Juan Vallet, *Revista de Derecho privado, Comentarios al Código Civil y Compilaciones Forales*, tomo XI, Editoriales de Derecho Reunidas, 2da ed, 1982, pág. 404, citando a García

Goyena, *Concordancias*, II, págs. 107 y ss. Véase, además, Puig Peña, *Tratado de Derecho Civil Español*, Vol. II, Madrid, 1963, a las págs. 462-463.

En efecto, el consenso de los comentaristas españoles es que la singular mejora en cuestión se concibió como un medio para fortalecer la autoridad de la madre viuda que se quedaba sola a cargo de los hijos y administraba su herencia. Era un instrumento para procurar la disciplina y obediencia de los hijos, apoyado en el premio que podía concederle a éstos. **Presuponía, sin lugar a dudas, que la viuda permaneciese célibe**, para poder dedicarse enteramente al deber fiduciario de administrar la herencia de los hijos que tuvo con el causante. Dicho de otra manera, la mejora en cuestión se concibió precisamente para la viuda que no volvía a casarse y que se dedicaba así sola a atender a los hijos habidos con el causante. Véase, además, Roca Sastre, *Derecho de Sucesiones*, Tomo II, 2da ed. Revisada, Bosch, Barcelona (1997); Vélez Torres, *Derecho de Sucesiones*, (1992) pág. 267, citando a Valverde.

Más allá del claro historial de la mejora autorizada mediante capitulaciones matrimoniales, está el hecho contundente de que el Art. 758 del Código Civil de Puerto Rico expresamente dispone, en lenguaje claro y patente, que la mejora aludida a de ser otorgada por el viudo o la viuda **"que no haya contraído nuevas nupcias..."** Es por el tenor palmario e indubitable de ese lenguaje que en la doctrina civilista de ordinario se enumera como uno de los requisitos esenciales de esta modalidad de la mejora el que el viudo o

la viuda **continúe en estado de viudedad al ejercer la facultad de mejorar**. González Tejera, *ibid*, pág. 504. De cualquier modo, la inequívoca disposición del Art. 758 del Código Civil debe observarse cabalmente, en vista de la norma cardinal de que cuando la ley es clara y libre de toda ambigüedad, se ha de atender a su letra. Art. 14 del Código Civil, 31 L.P.R.A. sec. 14; Mun. de San Juan v. Banco Gubernamental de Fomento, 140 D.P.R. 873 (1996); La salle v. Jta. Dir. A.C.A.A., 140 D.P.R. 694 (1994); Ferretería Matos v. P.R. Tel. Co., 110 D.P.R. 153 (1980); Rodríguez v. Fidelity Bond Mortg. Corp., 108 D.P.R. 156 (1978).

En conclusión, conforme al Art. 758 del Código Civil, *supra*, el cónyuge supérstite tiene que estar en estado de viudez al momento de ejercer la facultad de mejorar; lo requerido es la **soltería al momento de ejercer la facultad**. Vallet de Goytisolo, *supra*, pág. 410.


V

Pasemos ahora a aplicar al caso de autos la normativa reseñada antes.

En el caso de autos, Latorre permaneció en estado de viudez por un tiempo, pero luego contrajo nuevas nupcias, **antes de ejercer la facultad de mejorar** otorgada en sus capitulaciones matrimoniales con el causante. Por ende no se cumplió con uno de los requisitos esenciales del Artículo 758 del Código Civil, *supra*. Por lo cual es evidente que el reclamo de Latorre no procede. Erró el foro de instancia al resolver de otro modo.

Habiendo determinado que la señora Latorre no podía ejercer la facultad de mejorar por no cumplir con uno de los requisitos fijados por el Código Civil, no es necesario dilucidar en este caso el asunto relacionado a la potestad del cónyuge supérstite de mejorar cuando en el matrimonio se procrea sólo un hijo común, asunto que ha dado lugar a extensas y complejas discusiones en la doctrina civilista.

Por los fundamentos expuestos se dictará sentencia para revocar los dictámenes del foro apelativo y del foro de instancia en el caso de autos, y para devolver el caso a este foro a fin de que continúen los procedimientos allí conforme a lo aquí pautado.


JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Estrella Graulau Matos,
Etc.

    Demandantes-Peticionarios

        vs.            CC-2003-464      Certiorari

Edith Latorre Thelmont, Etc.

    Demandados-Recurridos

SENTENCIA

San Juan, Puerto Rico, a 10 de agosto de 2004.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente, se dicta sentencia para revocar los dictámenes del foro apelativo y del foro de instancia en el caso de autos, y para devolver el caso a este foro a fin de que continúen los procedimientos allí conforme a lo aquí pautado.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López disiente sin opinión.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo