Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| MANUEL FALCÓN TORRES Y OTROS<br><br>Peticionarios<br><br>V.<br><br>MIGUEL GASTÓN BOURDON Y OTROS<br><br>Recurridos | TA2025CE00428 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Salinas<br><br>Caso Núm.: GM2018CV00389<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 31 de octubre de 2025.

El 9 de septiembre de 2025, compareció ante este Tribunal de Apelaciones, el señor Manuel Falcón Torres (en adelante, señor Falcón Torres), la señora Sonia E. Negrón Fernández (en adelante, señora Negrón Fernández), y la Sociedad Legal de Gananciales que constituyen (en conjunto parte peticionaria), por medio de recurso *Certiorari*. Mediante este, nos solicita que, revisemos la *Resolución* emitida el 21 de noviembre de 2024, reducida a escrito el 17 de junio de 2025 y notificada el 18 de junio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Salinas. En virtud del aludido dictamen, el foro *a quo* ordenó la paralización de los procedimientos.

Por los fundamentos que adelante se exponen, se *deniega* la expedición del recurso de *certiorari*.

## I

Los hechos que propiciaron la controversia de epígrafe se remontan a una *Demanda* sobre daños y perjuicios, instada el 17 de octubre de 2018, por el señor Falcón Torres, la señora Negrón

Fernández, sus hijos y los señores Víctor Rivera Santiago (en adelante, señor Rivera Santiago) y Ramón Cruz Martínez (en adelante, señor Cruz Martínez), en contra del señor Miguel Gastón Bourdon (en adelante, señor Gastón Bourdon) y Holsum de Puerto Rico (en adelante Holsum y en conjunto parte recurrida). De las alegaciones de la *Demanda* surge que, la causa de acción tiene origen en un accidente automovilístico ocurrido el 19 de octubre de 2017. Según se desprende de la *Demanda*, el señor Gastón Bourdon mientras conducía un vehículo propiedad de Holsum, impactó por la parte posterior el vehículo ocupado por los señores Falcón Torres, Cruz Martínez y Rivera Santiago, quienes al momento se encontraban laborando para la Autoridad de Energía Eléctrica (AEE). La parte peticionaria, le imputó negligencia al señor Gastón Bourdon y razonó que, tal negligencia le ocasionó múltiples daños físicos y mentales.

Más adelante, el 20 de agosto de 2019, la parte peticionaria presentó *Moci[ó]n Sometiendo Demanda Enmendada*. En igual fecha, sometió *Demanda Enmendada*.

Por su parte, la parte recurrida presentó *Contestaci[ó]n a Demanda Enmendada* el 7 de octubre de 2019, donde también incluyó una reconvención. En la misma fecha, la parte recurrida además presentó *Demanda Contra Tercero* contra la AEE.

Transcurridas varias incidencias procesales, innecesarias pormenorizar, el señor Falcón Torres presentó *Moci[ó]n para que se Permita el Desistimiento de la Demanda por parte del Demandante Manuel Falc[ó]n Torres, sin perjuicio, y se Contin[ú]e el Pleito por los Restantes Demandantes*. Explicó que, como consecuencia del accidente que dio inicio a la demanda, se encontraba recibiendo tratamiento de la Corporación del Fondo del Seguro del Estado (CFSE) y su caso se encontraba ante la Comisión Industrial del CFSE. Sostuvo que, la acción presentada era prematura y por tanto,

le solicitó al foro primario que permitiera el desistimiento, sin perjuicio, por parte del señor Falcón Torres, así como la continuación del pleito en cuanto a los otros demandantes.

El 6 de agosto de 2020, compareció la parte recurrida mediante *Moci[ó]n en Cumplimiento de Orden*. En su moción, arguyó que, procedía que se desestimaran sin perjuicio o se paralizaran todas las causas de acción esbozadas en la *Demanda*, incluyendo la de los otros demandantes, hasta tanto adviniera final y firme la decisión del Administrador del CFSE.

Por otro lado, la parte peticionaria presentó *Moci[ó]n en Torno a Requerimientos Hechos por Holsum de Puerto Rico, Inc. y Otros*. Por medio de la aludida moción, la parte peticionaria se opuso a la solicitud de la parte recurrida en cuanto a la desestimación o paralización de la causa de acción respecto a todos los demandantes.

De acuerdo a la *Minuta* de 13 de octubre de 2020, en esa fecha se celebró una vista sobre el estado procesal del caso mediante video conferencia. En dicha vista, el foro recurrido decretó el desistimiento sin perjuicio del señor Falcón Torres. Mediante *Sentencia Parcial* desestimó sin perjuicio la *Demanda* por falta de jurisdicción en cuanto al señor Falcón Torres.

Posteriormente, el foro *a quo* emitió *Sentencia* donde desestimó sin perjuicio la *Demanda* en cuanto a la señora Negrón Fernández, sus hijos y los otros demandantes, por prematura. El aludido dictamen fue revocado por este Tribunal, mediante *Sentencia* emitida el 23 de septiembre de 2021, en el caso con designación alfanumérica KLAN202100483. Un panel hermano ordenó la continuación de la causa de acción instada por la señora Negrón Fernández y sus hijos.

Así las cosas, el 25 de abril de 2024, la parte peticionaria presentó *Moci[ó]n para que se Desestime la Reconvención y Demanda contra Tercero Instada por la Parte Demandada*. Por media de dicha moción, la parte peticionaria expuso que, si el señor Gastón Bourdón se encontraba recibiendo tratamiento por parte de la CFSE, procedía que se desestimara la reconvención y la demanda contra tercero instada por este, por ser prematura.

Transcurridos varios trámites procesales, innecesarios pormenorizar, la parte recurrida presentó *Oposición a "Moción para que se Desestime la Reconvención y la Demanda contra Tercero"*. Por medio de la cual, le solicitó al Tribunal de Primera Instancia la paralización de los procedimientos en su totalidad, hasta tanto la CFSE emitiera una decisión final y firme. Lo anterior, debido a que había varios reclamantes, entiéndase, el señor Falcón Torres y el señor Gastón Bourdon, que estaban recibiendo tratamiento médico de la CFSE. En su moción, citó el caso *Díaz Hernández y otros v. Mapfre y otros*, 213 DPR 961 (2024) y explicó que, según dicho caso, no procede la desestimación de la acción, sino, la paralización hasta que advenga una decisión final y firme.

El 15 de julio de 2024, el señor Falcón Torres presentó *Solicitud de Enmienda a Demanda para Incluir a Manuel Falc[ó]n Torres como Demandante*. Sostuvo que, el 21 de marzo de 2024, la Comisión Industrial emitió su última *Resolución* con la relación a su tratamiento y compensación. Indicó que, el 28 de junio de 2024, la CFSE emitió *Orden de Pago de la Compensación Adjudicada* por la Comisión Industrial, por lo cual, todos los trámites ante ambos organismos habían culminado. Solicitó al foro primario que, permitiera la enmienda a la *Demanda* para incluir al señor Falcón Torres como demandante y se continuaran los procedimientos.

Por otra parte, el 17 de julio de 2024, la CFSE compareció mediante *Solicitud Urgente de Intervención y Demanda de Subrogación*. En primer lugar, expresó que, el señor Falcón Torres había recibido tratamiento médico y compensación por la CFSE, ya que, el accidente sufrido estaba amparado por las disposiciones de la Ley del Sistema de Compensaciones por Accidentes del Trabajo. Asimismo, sostuvo que, debido a que todos los trámites habían culminado, el caso estaba maduro para subrogación. De igual manera, le solicitó al foro de primera instancia que, declarara con lugar su solicitud de intervención y demanda de subrogación y condenara a los demandados a satisfacer a la CFSE la suma de $39,350.66 por los gastos incurridos en el tratamiento del señor Falcón Torres.

Más adelante, la parte peticionaria presentó la *Segunda Demanda Enmendada Moci[ó]n para Someter Segunda Demanda Enmendada (Para reintegrar a Manuel Falcón Torres al pleito*). Mediante *Orden* emitida el 5 de agosto de 2024, el foro *a quo* permitió la enmienda a la demanda.

Holsum presentó el 1 de noviembre de 2024, la *R[é]plica a Solicitud de Intervenci[ó]n de la CFSE y a Solicitud de Enmienda a Demanda para Incluir a Manuel Falc[ó]n Torres como Demandante, y Solicitud Reiterando Paralizaci[ó]n de los Procedimientos*. En detalle, la parte recurrida se allanó procesalmente a la solicitud de intervención interpuesta por la CFSE. En cuanto a la solicitud de enmienda a la demanda interpuesta por el señor Falcón Torres, sostuvo que no procedía, ya que, a su juicio, únicamente se debía reactivar la causa de acción de este. Lo anterior, por motivo de que la *Sentencia Parcial* donde se desestimó la causa de acción del señor Falcón Torres no advino final y firme al no cumplir con las disposiciones de la Regla 42.3 de Procedimiento Civil. De igual manera, reiteró su solicitud de paralización de los procedimientos

del caso de epígrafe, conforme al caso *Díaz Hernández y otros v. Mapfre y otros*, *infra*. Mientras que, el 2 de noviembre de 2024, el señor Gastón Bourdon presentó *Posición del Demandado a Varias Mociones*, donde compartió la misma postura que Holsum.

El foro *a quo* emitió *Resolución* el 21 de noviembre de 2024, reducida a escrito el 17 de junio de 2025 y notificada el 18 de junio de 2025, donde terminó lo siguiente:

> Considerando lo discutido en la vista sobre el estado procesal celebrada el 5 de agosto de 2024 y lo expuesto en las mociones presentadas el 1 de noviembre de 2024, por el codemandado Holsum de Puerto Rico, Inc., Miguel Gastón Bourdon y la sociedad de gananciales compuesta con su esposa, y por encomienda de la Asociación de Garantía de Seguros Misceláneos de Puerto Rico; y la del 2 de noviembre de 2024, presentada por los codemandados Miguel Gastón Bourdon y la Sociedad Legal de Gananciales compuesta con su esposa, por conducto de sus respectivos representantes legales, este tribunal acoge la solicitud y emite la presente Resolución, ordenando **la paralización de los procedimientos** toda vez que el Sr. Miguel Gastón Bourdon no ha sido dado de alta por la CFSE.
>
> La parte demandante y/o demandados tendrán la obligación de informar al Tribunal para la continuación de los procedimientos.

Inconforme, el 3 de julio de 2025, la parte peticionaria presentó la *Moción de Reconsideración*. El 22 de agosto de 2025, Holsum presentó *Oposición a Moción de Reconsideración*. Asimismo, el 23 de agosto de 2025, el señor Gastón Bourdon presentó *Oposición a Solicitud de Reconsideración*.

El Tribunal de Primera Instancia emitió el 26 de agosto de 2025, notificada el 27 de agosto de 2025, *Resolución Interlocutoria*, en la cual dispuso:

> Examinada la "Moción de Reconsideración" presentada el 3 de julio de 2025 por la parte demandante a través de su representante legal, el Tribunal dispone lo siguiente:
>
> **No ha lugar. Véase Resolución emitida el 21 de noviembre de 2024 y reducida a escrito el 17 de junio de 2025.**

Aún inconforme, la parte peticionaria acudió ante este foro revisor mediante recurso de *Certiorari*, donde esgrimió los siguientes señalamientos de error:

1. Incidió el TPI al determinar en su resolución que los comparecientes estaban compelidos a esperar por una determinación final y firme de la CFSE en relación al codemandado Sr. Miguel Gastón Bourdon, decisión que los expone a la posibilidad de que les prescriba su causa de acción.

2. Incurrió en error el TPI en la apreciación que hizo sobre los hechos y el derecho discutidos en la opinión de **Díaz Hernández v. MAPFRE PRAICO**, *supra*.

Con el beneficio de la comparecencia de las partes, procedemos a disponer del recurso ante nuestra consideración.

**II**

### A. El Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020)[1]. Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, […], dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". (citas omitidas) *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372; *Torres González v. Zaragoza Meléndez*, supra, pág. 848. La precitada Regla dispone lo siguiente:

---

[1] Véase también, *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[2]

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y

---

[2] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 59, 215 DPR __ (2025).

rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**B. *Ley del Sistema de Compensaciones por Accidentes en el Trabajo***

La Constitución de Puerto Rico establece que, todo trabajador debe estar protegido contra riesgos a su salud o integridad personal en su empleo. Art. II, Sec. 16, Const. PR, LPRA, Tomo I; *Méndez Ruíz v. Techno Plastics*, 2025 TSPR 68, 216 DPR __ (2025). Mediante la aprobación de la Ley del Sistema de Compensaciones por Accidentes en el Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 LPRA sec. 1 *et seq.*, (Ley Núm. 45), se crearon el Fondo del Seguro del Estado y la Comisión Industrial de Puerto Rico, con el propósito de asegurar al trabajador empleado una compensación justa y rápida por los daños sufridos a consecuencia de accidentes o enfermedades acaecidas en el desempeño de su trabajo. *Íd.*; *Carrasquillo Pérez et. al. v. CSM*, 214 DPR 1033 (2024); *Arzuaga et als. v. Empresas Brunet et al.*, 211 DPR 803, 810 (2023); *González v. Multiventas*, 165 DPR 873, 880-881 (2005); *Guzmán y otros v. ELA*, 156 DPR 693, 727 (2002). La aprobación de esta legislación surgió como resultado de mutuas concesiones entre los obreros, cuya fuerza era limitada, y los patronos quienes enfrentaban una intensa presión de parte de sus obreros. *González*

*v. Multiventas, supra,* pág. 881. La referida ley estableció un esquema de aportación patronal compulsoria a un fondo estatal de seguro, con el fin de compensar lesiones que provengan de cualquier acto o función del obrero, siempre que sean inherentes a su trabajo, o que ocurran en el curso de éste. *Íd.*; *Arzuaga et als. v. Empresas Brunet et al.,* supra, pág. 810; *Martínez Rodríguez v. Bristol Myers, Inc.,* 147 DPR 383, 393 (1999); *Odriozola v. Superior Cosmetic Distributors Corp.,* 116 DPR 485, 499 (1985).

Conforme al esquema de la CFSE, el patrono asume el riesgo de la lesión, entendiéndose que su responsabilidad es absoluta. *González v. Multiventas,* supra, pág. 881. Siendo así, el empleado que se acoge a la CFSE por un accidente del trabajo no tendrá que probar que hubo negligencia de parte del patrono como causa de la lesión o enfermedad, por lo que es inmaterial que el accidente haya ocurrido a consecuencia de la negligencia del patrono, de un tercero, o hasta del propio empleado. *Íd.*; *Guzmán y otros v. ELA,* supra, pág. 729; *Arzuaga et als. v. Empresas Brunet et al.,* supra, pág. 811. Es decir, el empleado recibe compensación independientemente de quién sea responsable por el accidente. La legislación evita que el empleado tenga que enfrentar las dificultades de una reclamación civil ante los tribunales, donde tendría que probar el elemento de culpa o negligencia. *González v. Multiventas,* supra, pág. 881; *Guzmán y otros v. ELA,* supra, pág. 730. A cambio de esta protección, el patrono asegurado recibe inmunidad contra cualquier reclamación civil en daños y perjuicios que pueda entablar el empleado lesionado en su contra. *González v. Multiventas,* supra, págs. 881-882; *Guzmán y otros v. ELA,* supra.

De ordinario, la Ley Núm. 45, *supra,* no provee para que el obrero lesionado reembolse a la CFSE los gastos de tratamiento médico y compensación en los que incurrió si el accidente está relacionado con el empleo. Le corresponde al Fondo asumir la

responsabilidad de ofrecer tratamiento médico y compensar al obrero sin derecho a reembolso alguno, según dispone la ley.[3] *Saldaña Torres et al. v. Mun. San Juan,* 198 DPR 934, 942-943 (2017).

Sin embargo, el estatuto establece que, en aquellos casos en los que la lesión, enfermedad o muerte sufrida por el empleado en su lugar de trabajo sea imputable a un tercero, tanto el obrero lesionado como el Administrador de la CFSE -subrogándose en los derechos del obrero por los servicios pagados- podrán reclamarle judicialmente a ese tercero responsable. En otras palabras, el Fondo tiene derecho a recobrar, mediante la acción de subrogación, los daños que compensó o los gastos en los que incurrió en el tratamiento del obrero, relacionados con el accidente de trabajo. (Citas omitidas). Véase *Arzuaga et als. v. Empresas Brunet et al.,* supra, págs. 811-812.

Específicamente, el Art. 29 de la Ley Núm. 45, *supra,* dispone lo siguiente:

> En los casos en que la lesión, enfermedad profesional o la muerte que dan derecho de compensación al obrero, empleado o sus beneficiarios, de acuerdo con este capítulo, le hubiere provenido bajo circunstancias que hicieren responsables a tercero de tal lesión, enfermedad o muerte, el obrero o empleado lesionado o sus beneficiarios podrán reclamar y obtener daños y perjuicios del tercero responsable de dicha lesión, enfermedad o muerte dentro del año subsiguiente a la fecha en que fuere firme la resolución del caso por el Administrador del Fondo del Seguro del Estado, y éste podrá subrogarse en los derechos del obrero, empleado o sus beneficiarios para entablar la misma acción en la forma siguiente:

> Cuando un obrero o empleado lesionado, o sus beneficiarios en casos de muerte, tuvieren derecho a entablar acción por daños contra tercero, en los casos en que el Fondo del Seguro del Estado, de acuerdo con los términos de este capítulo, estuviere obligado a compensar en alguna forma, o a proporcionar tratamiento, **el Administrador del Fondo del Seguro del Estado se subrogará en los derechos del obrero o empleado, o de sus beneficiarios, y podrá entablar procedimientos en contra del tercero en nombre del**

---

[3] *Sevilla v. Municipio Toa Alta,* 159 DPR 684, 690 (2003).

**obrero o empleado, o de sus beneficiarios, dentro de los noventa (90) días siguientes a la fecha en que la decisión fuere firme y ejecutoria, y cualquier suma que como resultado de la acción, o a virtud de transacción judicial o extrajudicial se obtuviere en exceso de los gastos incurridos en el caso se entregará al obrero o empleado lesionado o a sus beneficiarios con derecho a la misma.** El obrero o empleado o sus beneficiarios serán parte en todo procedimiento que estableciere el Administrador bajo las disposiciones de esta sección, y será obligación del Administrador notificar por escrito a las mismas de tal procedimiento dentro de los cinco (5) días de iniciada la acción.

Si el Administrador dejare de entablar demanda contra la tercera persona responsable, según se ha expresado en el párrafo anterior, el obrero o empleado, o sus beneficiarios quedarán en libertad completa para entablar tal demanda en su beneficio, sin que vengan obligados a resarcir al Fondo del Seguro del Estado por los gastos incurridos en el caso.

**El obrero o empleado lesionado ni sus beneficiarios podrán entablar demanda ni transigir ninguna causa de acción que tuvieren contra el tercero responsable de los daños, hasta después de transcurridos noventa días a partir de la fecha en que la resolución del Administrador del Fondo del Seguro del Estado fuere firme y ejecutoria**.

Ninguna transacción que pueda llevarse a cabo entre el obrero o empleado lesionado, o sus beneficiarios en caso de muerte, y el tercero responsable, dentro de los noventa (90) días subsiguientes a la fecha en que la decisión fuere firme y ejecutoria, o después de expirado dicho término si el Administrador hubiere presentado su demanda, tendrá valor y eficacia en derecho a menos que se satisfagan previamente los gastos incurridos por el Fondo del Seguro del Estado en el caso; y no se dictará sentencia en pleitos de esta naturaleza, ni se aprobará transacción alguna con relación a los derechos de las partes en dichos pleitos sin hacer reserva expresa del derecho del Fondo del Seguro del Estado a reembolso de todos los gastos incurridos; [d]isponiéndose, que el secretario de la sala que conozca de alguna reclamación de la naturaleza antes descrita notificará al Administrador del Fondo del Seguro del Estado sobre cualquier providencia dictada por el tribunal que afecte los derechos de las partes en el caso, así como de la disposición final que del mismo se hiciere.

El Administrador del Fondo del Seguro del Estado podrá transigir sus derechos contra tercero responsable de los daños; entendiéndose, sin embargo, que ninguna transacción extrajudicial podrá afectar los derechos del obrero o empleado, o de sus beneficiarios, sin la conformidad o aprobación expresa de ellos.

> Cualquier suma obtenida por el Administrador del Fondo del Seguro del Estado, por los medios dispuestos en este Artículo, será ingresada en el Fondo del Seguro del Estado a beneficio del grupo particular en que se clasificaba la ocupación o la industria en que se empleaba al obrero o empleado lesionado o muerto.

El Máximo Foro ha explicado que, nuestro ordenamiento jurídico coloca a la CFSE en la misma posición del lesionado con relación a todas las acciones y remedios a los que tiene derecho. *Arzuaga et als. v. Empresas Brunet et al.*, supra, pág. 813. En esta acción, el lesionado o sus beneficiarios son parte de la reclamación presentada por la CFSE, puesto que, por ley, la acción interpuesta se presenta en su nombre y beneficio. *Íd.* La Ley Núm. 45, *supra*, le otorga al CFSE la primera oportunidad para acudir a los tribunales dentro del término de noventa (90) días siguientes a la fecha en la que la decisión del Administrador se convierta en firme y ejecutoria. *Íd.*

Por otro lado, la Ley Núm. 45, *supra*, reconoce de forma expresa una causa de acción en contra del tercero responsable bajo los principios de responsabilidad contractual. Para dicha acción independiente, la ley concede al lesionado o sus beneficiarios un término prescriptivo de un (1) año desde la fecha en que fuera firme y ejecutoria la resolución del caso por el Administrador del Fondo. *Arzuaga et als. v. Empresas Brunet et al.*, supra, págs. 811-812. El término prescriptivo de dicha acción queda interrumpido estatutariamente en las instancias en que la CFSE presente acción subrogatoria. Por tanto, no se dictará sentencia ni se aprobará transacción entre el empleado y el tercero sin hacer reserva de forma expresa del derecho de la CFSE. Consecuentemente, hasta tanto la CFSE haya dejado expirar el término, el obrero se verá impedido de presentar una acción judicial o transigir. *Íd.*

### C. *Díaz Hernández y otros v. Mapfre y otros*, 213 DPR 961 (2024)

En apretada síntesis, en el caso de *Díaz Hernández y otros v. Mapfre y otros*, supra, la señora Wilmarie Díaz Hernández y el señor José Agosto Rivera, ambos por sí y en representación de la Sociedad Legal de Gananciales compuesta por ambos (en adelante, demandantes) presentaron una demanda sobre daños y perjuicios contra MAPFRE, el señor Yariel López Pagán y otros. La causa de acción surge de un accidente automovilístico en el cual el señor Jorge Agosto Rivera sufrió varios daños físicos por los cuales recibió tratamiento por parte de la cubierta de la Administración de Compensaciones de Accidentes de Automóviles (ACAA).

Según surge del tracto procesal expuesto por el Tribunal Supremo, el foro primario le solicitó a los demandantes en ese caso presentar la *Resolución firme y ejecutoria,* por medio de la cual, la ACAA acreditara no tener interés en instar una acción en contra de MAPFRE y los otros demandados, so pena de desestimación. Más adelante, los demandados presentaron una moción donde adujeron que, la ACAA no había notificado documento alguno.

Transcurridos varios trámites procesales, innecesarios pormenorizar, los demandantes presentaron ante el Tribunal de Primera Instancia una correspondencia oficial emitida por la ACAA donde expresó que, esta no intervendría en el caso de los demandantes. No obstante, el foro *a quo* razonó que, lo presentado por los demandantes no cumplía con lo dispuesto por ley. Subsiguientemente, los demandantes presentaron moción ante el foro de primera instancia donde le informaron su interés de proseguir con los trámites extrajudiciales con la ACAA.

Posteriormente, el Tribunal de Primera Instancia emitió Sentencia mediante la cual dispuso: "*Ante la ausencia de la Resolución firme y ejecutoria requerida en Ley*[,] *y sin haberse*

*establecido que han transcurrido los términos dispuestos para que la parte demandante pudiera presentar su causa de acción, este Tribunal desestima sin perjuicio por prematura la Demanda*". Dicha determinación fue confirmada por este Tribunal de Apelaciones.

Sin embargo, nuestro Tribunal Supremo revocó tal determinación y razonó que, las demandas que un beneficiado de la ACAA presente de manera prematura son anulables y no nulas.

En cuanto al derecho de subrogación de la agencia, explicó que, de manera idéntica que en la Ley de la CFSE, se le reconoció a la ACAA el derecho a subrogarse cuando expresamente se le reservó el primer turno para instar acción contra un tercero responsable. Al igual que en la Ley Núm. 45, *supra*, la agencia, en este caso la ACAA, tiene disponible un término de noventa (90) días siguientes a la fecha en que la resolución advenga firme y ejecutoria para ejercer su derecho de subrogación. De igual manera, permite que el lesionado presente demanda contra tercero si la ACAA no ejerce el derecho de subrogación dentro del término de noventa (90) días dispuesto por ley. El Máximo Foro, también señaló que, al igual que en la Ley Núm. 45, *supra*, la acción de subrogación es una medida para salvaguardar exclusivamente los intereses de la ACAA.

Finalmente, la más alta Curia determinó que, en aras de salvaguardar la economía procesal, salvo que la agencia renuncie a su derecho de presentar la acción de subrogación antes del término dispuesto por ley, "**procede que los tribunales paralicen los procedimientos hasta tanto transcurran los 90 días dispuestos en ley**". (Énfasis en el original). *Díaz Hernández y otros v. Mapfre y otros*, supra. Únicamente, en los casos en que la agencia requiera la anulación de la demanda mediante la presentación oportuna de su acción de subrogación y la correspondiente súplica de declaración de nulidad, es que el foro *a quo* procederá con la desestimación, sin perjuicio. *Íd.*

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

En su primer señalamiento de error, la parte peticionaria sostiene que, el foro de primera instancia incidió al determinar en su dictamen que, estaba compelida a esperar por una determinación final y firme de la CFSE con relación al codemandado, señor Gastón Bourdon, y que ello, le exponía a la posibilidad de que le prescribiera su causa de acción.

Como segundo señalamiento de error, la parte peticionaria arguye que, el Tribunal de Primera Instancia erró en la apreciación que hizo sobre los hechos y el derecho discutido en el caso de *Díaz Hernández y otros v. Mapfre y otros*, supra.

Tras evaluar detenidamente el recurso presentado por la parte peticionaria, colegimos que, no procede la expedición del auto solicitado. Los señalamientos de error antes reseñados, por los fundamentos aducidos en la petición, no pueden activar nuestra jurisdicción discrecional en el caso de autos. La decisión recurrida no es manifiestamente errónea y encuentra cómodo asilo en la sana discreción del Tribunal de Primera Instancia.

De igual manera, la parte peticionaria tampoco ha logrado persuadirnos de que nuestra abstención apelativa en este momento y sobre el asunto planteado constituiría un rotundo fracaso a la justicia. Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*

**IV**

Por los fundamentos que anteceden, se *deniega* la expedición del recurso de *certiorari.*

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones